1  TIMOTHY J. GORRY (SBN 143797)
   CHRISTOPHER T. WILLIAMS (SBN 171907)
2  VENABLE LLP
   2049 Century Park East, Suite 2100
3  Los Angeles, California 90067

4  Telephone:  (310) 229-9900
   Facsimile:  (310) 229-9901
5  E-mail: tjgorry@venable.com
           ctwilliams@venable.com
6
   Attorneys for Plaintiff and Counter-defendant
7  TEOCO Corporation

8

9            UNITED STATES DISTRICT COURT

10        FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  TEOCO CORPORATION, | Case No. CV 08 80032 MISC JSW |
| 13                    Plaintiff, | **DECLARATION OF DAMON W.D. WRIGHT IN SUPPORT OF MOTION OF PLAINTIFF** |
| 14       vs. | **TEOCO CORPORATION TO COMPEL SIERRA VENTURES TO PRODUCE** |
| 15  RAZORSIGHT CORPORATION, SUNDEEP SANGHAVI, and SHITAL SANGHAVI, | **DOCUMENTS AND A PRIVILEGE LOG IN RESPONSE TO SUBPOENA DUCES TECUM** |
| 16 | |
| 17                    Defendants. | (Pending Action in USDC Eastern District of Virginia Case No. 1:07cv887 CMH/BRP) |
| 18  RAZORSIGHT CORPORATION, | [Teoco's Notice of Motion and Motion to Compel |
| 19                    Counter-claimant, | Sierra Ventures to Produce Documents and a Privilege Log in Response to Subpoena Duces |
| 20       vs. | Tecum and [Proposed] Order Filed Concurrently Herewith] |
| 21  TEOCO CORPORATION, and ATUL JAIN, | |
| 22                    Counter-defendants. | |

23

24

25

26

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

**DECLARATION OF DAMON W.D. WRIGHT**

I, Damon W.D. Wright, declare as follows:

1.      I am an attorney for Plaintiff TEOCO Corporation ("TEOCO") in the matter entitled TEOCO Corporation v. Razorsight Corporation, et al., United States District Court for the Eastern District of Virginia Case No. 1:07cv887 (CMH/BRP) (hereinafter "the E.D.Va. case").

2.      I make this declaration based on my own personal knowledge and, if called as a witness, would and could competently testify thereto.

3.      This declaration is filed in support of TEOCO's Motion to Compel third parties Sierra Ventures VII LP, Sierra Ventures VIII LP-A, and Sierra Ventures VIII LP-B (collectively "Sierra Ventures") to each produce documents and a privilege log in response to the Subpoena Duces Tecum (the "Subpoenas") served upon each Sierra Ventures entity on February 15, 2008  in connection with the pending E.D.Va. case.  True and correct copies of the underlying Subpoenas are collectively attached as Exhibit "A."  The issue is simple.  TEOCO needs the third-party discovery.  Sierra Ventures served untimely objections to the Subpoenas.  Sierra Ventures then said it would produce documents in response to some of the requests, however. Sierra Ventures refused to produce any documents whatsoever.  A month and a half has passed since the Subpoenas were served, and yet not a single document has been produced by Sierra Ventures.  Accordingly, TEOCO requests that Sierra Ventures be compelled to produce all non-privileged documents responsive to Requests Nos. 4 – 11 of the Subpoenas and to produce a log for any documents withheld on privilege grounds.

4.      The E.D.Va. case concerns a business conspiracy between two former TEOCO employees – Mr. Sundeep Sanghavi and Mrs. Shital Sanghavi – and Razorsight to injure TEOCO. Sundeep Sanghavi founded Razorsight.  His wife, Shital Sanghavi, later went to work for Razorsight. During and after the Sanghavis' employment with TEOCO, the Sanghavis and Razorsight have accessed, misappropriated and unjustly profited from TEOCO's proprietary intellectual property.   In discovery, the Sanghavis have conceded that Razorsight made use of TEOCO's intellectual property in developing Razorsight software and serving Razorsight clients.  TEOCO believes the evidence will show that Razorsight's business, products and services have been founded on TEOCO's proprietary intellectual property.  TEOCO is suing Razorsight and the Sanghavis for injunctive relief, copyright

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

2

1   infringement, violation of the Federal Computer Fraud and Abuse Act, misappropriation of trade

2   secrets, breach of contract, breach of the duty of loyalty, and civil conspiracy.  In large part, TEOCO's

3   damages analysis focuses on the value of Razorsight and its products and services that have been

4   developed using TEOCO's proprietary intellectual property.  The pretrial conference is set for April

5   17, 2008, with trial to begin four to eight weeks later.  A true and correct copy of the underlying Third

6   Amended Complaint is attached as Exhibit "B."

7       5.      Sierra Ventures is a venture capital group and Razorsight's majority shareholder.  In

8   2005, Sierra Ventures made a $10 million investment in Razorsight, a privately-held company.  Two

9   of Sierra Ventures' partners, Steve Williams and Vispi Daver, serve on Razorsight's five-member

10  Board and work together with Sundeep Sanghavi, who serves as Chairman.  On information and

11  belief, Sierra Ventures has invested additional monies in Razorsight since 2005, has conducted due

12  diligence valuations in connection with this funding, and has closely monitored the value of its

13  investment up to the present.  Accordingly, Sierra Ventures is believed to have due diligence

14  documents associated with its funding that address Razorsight's past, present and future value,

15  including strategic plans, anticipated revenue forecasts, and market projections and analyses that bear

16  on TEOCO's damages.  TEOCO also believes that Sierra Ventures has records bearing on liability

17  issues, admissions by Razorsight and the Sanghavis, and relevant communications with Razorsight

18  and the Sanghavis.  On information and belief, Sierra Ventures has conducted its own investigation

19  into the facts of this case and has been in close communication with Razorsight about these facts.

20  Through third-party discovery, TEOCO has sought Sierra Venture records that include valuations of

21  Razorsight and its products and services associated with its funding, as well as Sierra Venture records

22  that contain admissions by and communications with and/or about Razorsight, Mr. Sanghavi, and Mrs.

23  Sanghavi that relate to TEOCO and the facts in the E.D.Va case.

24      6.      In late January, TEOCO prepared subpoenas, issued out of the U.S. District Court for

25  the Northern District of California, to Sierra Ventures.  TEOCO first attempted to serve a document

26  subpoena on Sierra Ventures at its principal place of business in Menlo Park, California on Friday,

27  January 25, 2008.  On February 14, Michael Klisch, an attorney in the Washington, DC office of

28  Cooley Godward Kronish LLP, contacted Venable and informed us that the subpoenas were served on

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

3

the wrong Sierra Ventures' entities, provided the names of three different Sierra Ventures entities and

agreed to accept service of subpoenas to those entities if TEOCO withdrew the subpoenas served on

the Sierra Ventures entities in Delaware. The following day, Friday February 15, TEOCO served by

hand upon Mr. Klisch subpoenas to the three entities he had identified, confirmed that the other

subpoenas were withdrawn, and reset the date to respond to two weeks from February 15, February

29, 2008, rather than two weeks from the initial service on February 8. See Subpoenas, attached as

Exhibit A.

7.      Although Sierra Ventures' production was due on February 29, 2008, timely objections

were not made, no documents have been produced, and Sierra Ventures' counsel has refused to

commit to when, if ever, Sierra Ventures will produce documents. Sierra Ventures' conduct has

seriously disrupted TEOCO's ability to obtain damages discovery about Razorsight and seriously

disrupted the pretrial schedule set by the U.S. District Court for the Eastern District of Virginia. After

the February 29 deadline passed, TEOCO's counsel repeatedly asked Sierra Ventures' counsel what

documents would be produced and when they would be produced. Sierra Ventures would not answer.

As a result, on March 7, TEOCO was required to move in the E.D.Va. case for an extension of the

deadline for disclosure of its damages expert reports. After initially opposing TEOCO's motion,

Razorsight and the Sanghavis then consented, U.S. Magistrate Judge Barry R. Poretz found good

cause for the extension, and the expert disclosure deadline was extended.

8.      Without explaining why it was unable to produce documents or serve objections by

February 29, Sierra Ventures waited until March 10 to serve its untimely objections. By letter dated

March 10, 2008, Sierra Ventures asserted three general objections, as well as specific objections to

each of the Request Nos. 1 – 13 in the Subpoenas. For its general objections, Sierra Ventures stated:

1.      Sierra Ventures objects to the Subpoenas to the extent that they seek the
disclosure of information or documents protected by the attorney-client
privilege, the work product doctrine, and/or any other applicable privilege or
doctrine.

2.      Sierra Ventures objects to the Subpoenas to the extent that they seek the
disclosure of confidential and/or proprietary business information or documents.

3.      Sierra Ventures objects to the Subpoenas to the extent that they seek the
disclosure of information or documents beyond that required by the Federal
Rules of Civil Procedure and the applicable local rules.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

4

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

For each of its specific objections, Sierra Ventures stated:

> Sierra Ventures objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calls for information protected from disclosure by the attorney-client privilege and work product doctrine and calls for the disclosure of confidential and/or proprietary business information.

Because Sierra Ventures' objections were due on February 29, its March 10 objections are untimely and are waived. Moreover, with General Objection No. 1, TEOCO has agreed that Sierra Ventures need not produce privileged documents. With General Objection No. 2, TEOCO has agreed that Sierra Ventures can designate such documents as "Highly Confidential" under the Agreed Protective Order. With General Objection No. 3 (objecting "to the extent [the requests] seek the disclosure of information or documents beyond that required by the Federal Rules of Civil Procedure and the applicable local rules"), Sierra Ventures' position is unclear. A true and correct copy of the March 10 letter is attached as Exhibit "D."

9.     On the morning of March 11, TEOCO moved this Court to transfer enforcement of the Subpoenas to the U.S. District Court for the Eastern District of Virginia. TEOCO explained: that Sierra Ventures' non-compliance with the Subpoenas is disrupting the schedule in the E.D.Va. case; that Sierra Ventures' counsel was located in Washington, D.C. near the E.D.Va. Court and is a member of the Bar of that Court; and that the E.D.Va. Court was thoroughly familiar with the issues in the case. In its Opposition, Sierra Ventures argued inter alia: that the motion to transfer was premature because it would be producing documents; that authority to transfer enforcement of Subpoenas was narrow; and transfer was only appropriate where there was consent.

10.     By letter dated March 14, 2008, Sierra Ventures served its "written responses" to the Subpoenas and represented that it would be producing non-privileged responsive documents to most of the requests set forth in the Subpoenas. A true and correct copy of the March 14 letter is attached as Exhibit "E." By Order dated March 17, 2008, U.S. District Judge Jeffrey S. White denied TEOCO's motion, finding that the dispute appeared premature and holding that authority to transfer is narrow. The Court also explained: "In the event a dispute does arise, and Teoco files a motion to compel, the parties are advised that this matter shall be randomly referred to a randomly assigned Magistrate Judge

5

CASE NO. CV 08 80032 MISC JSW                    DAMON W.D. WRIGHT DECLARATION IN SUPPORT OF TEOCO'S
DC2DOCS: 944172/42749-25018                    MOTION TO COMPEL SIERRA VENTURES TO COMPLY WITH SUBPOENAS

for resolution of any such dispute." Such a dispute exists.

11.    Sierra Ventures now refuses to produce any documents even though it previously represented to this Court (in opposing the motion to transfer) and to TEOCO's counsel (in correspondence) that it would produce documents. Notwithstanding the objections served on March 10, Sierra Ventures then stated that it would produce responsive documents. The introduction to Sierra Ventures' March 10 letter stated:

> Despite the objections that follow, ***Sierra intends to produce documents*** – and I look forward to resolving any issues concerning Sierra's objections and responses.

<u>See</u> Exhibit D (emphasis added.) Sierra Ventures also confirmed this by letter dated March 14, 2008, which set forth written responses to the Subpoenas. With this letter, Sierra Ventures stood on its untimely objections but did agree to produce non-privileged documents in response to Request Nos. 5, 6, 7, 8, 9, 10 and 11 – requests focused on admissions by and communications about Mr. and Mrs. Sanghavi. In response to each of these requests, Sierra Ventures stated:

> Subject to its objections, ***Sierra Ventures will produce non-privileged documents***, if any, that relate directly to the claims in this Action.

<u>See</u> Exhibit E (emphasis added.) Sierra Ventures has now refused to produce even these documents. Although over a month has passed since production was due, Sierra Ventures has still not produced a single document responsive to the Subpoenas.

12.    After this Court's March 17 Order, on March 18, counsel participated in an hour long conference call. Counsel discussed production of the valuation documents responsive to Request No. 4 (where Sierra Ventures stood on its objection), as well as documents responsive to Request Nos. 5 – 11 concerning admissions by and communications about Razorsight and the Sanghavis (where Sierra Ventures agreed to produce non-privileged documents). Sierra Ventures' counsel represented that he was still identifying what documents his client has in response to Request Nos. 5 - 11, but that he had received a CD containing thousands of pages of Sierra Ventures' documents, that the documents largely concerned Sierra Ventures' funding and due diligence with Razorsight, and that an associate had reviewed the documents for the better part of a day.

13.    Sierra Ventures' counsel proposed an offer to resolve the Subpoena issues. TEOCO's

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

counsel asked that it be sent over in writing. Two days later, Sierra Ventures offered to produce

valuation documents associated with Sierra Ventures' funding in Razorsight (responsive to Request

No. 4) if TEOCO would agree to certain conditions. Specifically, in a March 20, 2008 e-mail, Sierra

Ventures' counsel stated:

> Sierra will agree to produce valuations that pre-date the filing of the complaint under
> the "Highly Confidential" designation by 3/26/08 if:
> (1)    TEOCO does not challenge the "Highly Confidential" designations;
> (2)    TEOCO agrees that producing the valuations is in full satisfaction of the
> subpoenas to the Sierra entities;
> (3)    TEOCO dismisses the California action with prejudice; and
> (4)    TEOCO pays Sierra the fees and costs incurred in litigating the motion to transfer
> ($15,000), which Sierra contends was premature, unnecessary, unwarranted and
> frivolous.

By e-mail that afternoon, TEOCO's counsel explained that TEOCO would not pay Sierra Ventures

$15,000 for the valuation documents. TEOCO's counsel also pointed out that: (i) "timely production

would have avoided [attorney's] fees"; (ii) "Judge White did not order any payment of costs and fees";

and (iii) "Sierra's objections to the subpoena were due February 29, and the objections you served on

March 10 are waived."

14.    The following day, March 21, TEOCO's counsel asked Sierra Ventures when it would

be producing the documents, concerning admissions by and communications about Razorsight and the

Sanghavis (responsive to Request Nos. 5 – 11), that Sierra Ventures had previously agreed to produce

for free. Specifically, in a March 21, 2008 e-mail, TEOCO's counsel stated:

> Please let us know by 5 pm today when Sierra Ventures will be producing (or when we
> can pick up and copy) documents responsive to Request Nos. 5, 6, 7, 8, 9, 10 and 11.
> These are the Requests where Sierra Ventures said "Subject to its objections, Sierra
> Ventures will produce non-privileged documents, if any, that directly relate to the
> claims in the Action." .... Because of the scheduling issues in our case, we would like
> to receive or pick up the non-privileged documents responsive to Request Nos. 5, 6, 7,
> 8, 9, 10 and 11 by noon Wednesday, March 26.

That afternoon, Sierra Ventures' counsel responded by e-mail:

> I am sorry but it appears that we have not reached an agreement so Sierra will not be
> producing documents at the moment. Moreover, given our hour long conversation on
> Tuesday, during which I told you that I did not believe that there were any responsive
> documents, I am disappointed that you are presuming that responsive documents exist.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

7

Your document requests are highly objectionable and Sierra stands ready to litigate its objections to TEOCO's requests.

On a subsequent conference call on March 28, Sierra Ventures' counsel represented that Sierra Ventures' position remained the same and that it would not be producing any documents – either in response to Request No. 4 or in response to Request Nos. 5 – 11. A true and correct copy of the March 20 and 21 e-mail correspondence is attached as Exhibit "F."

15.     Sierra Ventures' counsel has now asserted that TEOCO had previously stated that it wanted "only" the valuation documents. This is incorrect. The point is also irrelevant and an attempt at misdirection. TEOCO wants Sierra Ventures to comply with the Subpoenas. Sierra Ventures' March 10 objections are waived. Sierra Ventures agreed to produce the valuation documents, responsive to Request No. 4, with limitations and only if TEOCO would agree to pay $15,000 for the documents. When TEOCO refused, Sierra Ventures then refused to produce any non-privileged documents responsive to Request Nos. 5 – 11 even though Sierra Ventures previously said it would produce such documents.

16.     Sierra Ventures is influencing the fair and efficient litigation of the E.D.Va. case and withholding critical evidence bearing on liability and damages issues. On March 10, Sierra Ventures' counsel stated "Sierra intends to produce documents." On March 14, Sierra Ventures' counsel stated "Sierra will produce non-privileged documents." Sierra Ventures has now refused to produce any documents and its objections are waived. For the foregoing reasons, TEOCO Corporation respectfully requests that its motion be granted and that Sierra Ventures be compelled to produce all non-privileged documents responsive to Requests Nos. 4 – 11 and to produce a log for any documents withheld on privilege grounds.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 31st day of March 2008, at Washington, D.C.

/s/ Damon W.D. Wright
Damon W.D. Wright

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

8

**PROOF OF SERVICE**

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Venable, LLP, 2049 Century Park East, Suite 2100, Los Angeles, California.

      On April 1, 2008, I served a copy of the foregoing document described as **DECLARATION OF DAMON W.D. WRIGHT IN SUPPORT OF MOTION OF PLAINTIFF TEOCO CORPORATION TO COMPEL SIERRA VENTURES TO PRODUCE DOCUMENTS AND A PRIVILEGE LOG IN RESPONSE TO SUBPOENA DUCES TECUM** on the interested parties in this action addressed as follows:

***See Attached Service List***

☐    **BY MAIL** (CCP §1013(a)&(b)): I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the U.S. Postal Service. Under that practice such envelope(s) is deposited with the U.S. postal service on the same day this declaration was executed, with postage thereon fully prepaid at 2049 Century Park East, Suite 2100, Los Angeles, California, in the ordinary course of business.

☐    **BY PERSONAL SERVICE** (CCP §1011): I delivered such envelope(s) by hand to the addressee(s) as stated above.

☐    **BY OVERNIGHT DELIVERY** (CCP §1013(c)&(d)): I am readily familiar with the firm's practice of collection and processing items for delivery with Overnight Delivery. Under that practice such envelope(s) is deposited at a facility regularly maintained by Overnight Delivery or delivered to an authorized courier or driver authorized by Overnight Delivery to receive such envelope(s), on the same day this declaration was executed, with delivery fees fully provided for at 2049 Century Park East, Suite 2100, Los Angeles, California, in the ordinary course of business.

☐    **BY FACSIMILE** CCP §1013(e) and (f) and CRC Rule 2008: I served the above stated document by facsimile from the facsimile machine of Venable, LLP whose phone number is (310) 229-9901.

☐    **BY ELECTRONIC TRANSMISSION.** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the document to be sent to the persons at the e-mail addresses listed herein. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

     Executed on April 1, 2008, at Los Angeles, California.

☒    **(FEDERAL)** I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

/s/ Barbara Washington
*Signature*

**V E N A B L E  L L P**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

LA: 205972/42749-250128

**Service List**
Case No. CV 08 80032 MISC JSW
*Teoco Corp. v. Razorsight, et al.*

***Counsel for Sierra Ventures VII LP, Sierra
Ventures VIII LP-A and Sierra Ventures VIII
LP-B***

Cooley Godward Kronish
Michael J. Klisch, Esq.
Joshua O. Mates, Esq.
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155

Cooley Godward Kronish
Michael J. Klisch, Esq.
777 6th Street NW, Suite 1100
Washington, DC  20001

***Counsel for Defendants Sundeep Sanghavi and
Shital Sanghavi***

Kathleen J.L. Holmes, Esq.
Williams Mullen
8270 Greensboro Drive, Suite 700
McLean, VA  22102

Edward M. Eakin, III, Esq.
Williams Mullen
P.O. Box 1320
Richmond, VA  23218-1320

***Counsel for Plaintiff and Counterclaim
Defendant TEOCO Corporation and Third-
Party Defendant Atul Jain***

Michael W. Robinson, Esq.
William D. Dolan, III, Esq.
Venable LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA  22182

Julia A. Petruzzelli, Esq.
Venable LLP
575 7th Street, NW
Washington, DC  20004-1601

***Counsel for Defendant and Counterclaim-
Plaintiff Razorsight Corp.***

Dana J. Finberg
LECLAIRRYAN, a Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
P.O. Box 2499
Richmond, VA  23218-2499

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

CASE NO. CV 08 80032 MISC JSW
DC2DOCS: 944172/42749-25018

PROOF OF SERVICE

1  Your document requests are highly objectionable and Sierra stands ready to litigate

2  its objections to TEOCO's requests.

3  On a subsequent conference call on March 28, Sierra Ventures' counsel represented that Sierra

4  Ventures' position remained the same and that it would not be producing any documents – either in

5  response to Request No. 4 or in response to Request Nos. 5 – 11. A true and correct copy of the

6  March 20 and 21 e-mail correspondence is attached as Exhibit "F."

7       15.    Sierra Ventures' counsel has now asserted that TEOCO had previously stated that it

8  wanted "only" the valuation documents. This is incorrect. The point is also irrelevant and an attempt

9  at misdirection. TEOCO wants Sierra Ventures to comply with the Subpoenas. Sierra Ventures'

10  March 10 objections are waived. Sierra Ventures agreed to produce the valuation documents,

11  responsive to Request No. 4, with limitations and only if TEOCO would agree to pay $15,000 for the

12  documents. When TEOCO refused, Sierra Ventures then refused to produce any non-privileged

13  documents responsive to Request Nos. 5 – 11 even though Sierra Ventures previously said it would

14  produce such documents.

15       16.    Sierra Ventures is influencing the fair and efficient litigation of the E.D.Va. case and

16  withholding critical evidence bearing on liability and damages issues. On March 10, Sierra Ventures'

17  counsel stated "Sierra intends to produce documents." On March 14, Sierra Ventures' counsel stated

18  "Sierra will produce non-privileged documents." Sierra Ventures has now refused to produce any

19  documents and its objections are waived. For the foregoing reasons, TEOCO Corporation respectfully

20  requests that its motion be granted and that Sierra Ventures be compelled to produce all non-privileged

21  documents responsive to Requests Nos. 4 – 11 and to produce a log for any documents withheld on

22  privilege grounds.

23       I declare under penalty of perjury under the laws of the United States that the foregoing is true

24  and correct. Executed this 31st day of March 2008, at Washington, D.C.

25

26  _Damon W.D. Wright_
     Damon W.D. Wright

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

8

# EXHIBIT A

# VENABLE LLP

| | | |
|---|---|---|
| 575 7th Street, NW<br>Washington, DC 20004 | Telephone 202-344-4000<br>Facsimile 202-344-8300 | www.venable.com |

| | | |
|---|---|---|
| Julie A. Petruzzelli | (202) 344-4010 | japetruzzelli@venable.com |

February 15, 2008

**VIA HAND DELIVERY**
**(COPY VIA E-MAIL ONLY)**

Michael J. Klisch, Esq.
Cooley Godward Kronish LLP
777 6th Street N.W., Suite 1100
Washington, Dc 20001

> **Re:** *TEOCO Corp. v. Razorsight Corp., et al.*
> **Subpoenas to Sierra Ventures**

Dear Michael:

Yesterday, in your telephone conversation with my partner, Michael Robinson, your follow up e-mail, and in our telephone conversation, you stated that you represent Sierra Ventures and its related entities. You informed us that the eight subpoenas that were served last Friday, February 8, 2008, were served on entities that do not have the requested documents. Those subpoenas were served on:

SIERRA VENTURES ASSOCIATES IX, LLC
SIERRA VENTURES FINANCE LIMITED, L.P.
SIERRA VENTURES, INC.
SIERRA VENTURES INC.
SIERRA VENTURES IV INTERNATIONAL, L.P.
SIERRA VENTURES IX, L.P.
SIERRA VENTURES MANAGEMENT COMPANY
SIERRA VENTURES MANAGEMENT II, LLC,

Yesterday, you stated that the entities that have the requested documents are:

SIERRA VENTURES VII, LP
SIERRA VENTURES VIII-A, LP
SIERRA VENTURES VIII-B, LP

Therefore, pursuant to your representations and your request, we are hereby withdrawing the eight subpoenas served on February 8, 2008, and replacing them with three subpoenas served respectively on Sierra Ventures VII, LP, Sierra Ventures VIII-A, LP, and Sierra Ventures VIII-B, LP. These substitution subpoenas are included with this letter, which is being hand delivered to

# VENABLE LLP

Michael J. Klisch, Esq.
February 15, 2008
Page 2

you today.  You stated that you are authorized to and would accept service of these subpoenas on behalf of these entities.

You will note that we have requested that responsive documents be produced to our offices in Los Angeles, California.  However, we presume that production in Washington, DC may actually be more convenient for you and your client, since you are located in Washington, DC.  If that is the case, we would in fact prefer to receive the documents at our Washington, DC office, located at 575 7th St., NW.

If we have misstated anything discussed yesterday, please respond immediately by written letter.  Otherwise, we look forward to receiving documents responsive to the three enclosed subpoenas on February 29, 2008.

Very truly yours,

Julie A. Petruzzelli

cc: Dana Finberg
    Kathleen Holmes

-2-

**Issued by the**
**UNITED STATES DISTRICT COURT**
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEOCO CORPORATION | **SUBPOENA IN A CIVIL CASE** |
| Plaintiff, | |
| v. | **Case pending in:** |
| | **EASTERN DISTRICT OF VIRGINIA** |
| RAZORSIGHT CORPORATION, SUNDEEP SANGHAVI | (Case No. 1:07cv887 CMH/BRP) |
| AND SHITAL SANGHAVI. | |
| Defendants. | |

TO:    SIERRA VENTURES VII, L.P.
       2884 SAND HILL ROAD, STE. 100
       MENLO PARK, CA 94025
       C/O MICHAEL J. KLISCH, ESQ.
       COOLEY GODWARD KRONISH LLP
       777 6TH STREET N.W., SUITE 1100
       WASHINGTON, DC 20001

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): SEE ATTACHED SCHEDULE A

| PLACE<br>Venable LLP<br>2049 Century Park East, Suite 2100<br>Los Angeles, CA 90067 | DATE AND TIME<br>February 29, 2008 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Julie A. Petruzzelli*    Attorney for Plaintiff | Feb. 15, 2008 |

ISSUING OFFICER'S NAME AND PHONE NUMBER
Julie Petruzzelli    202-344-4010

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

## PROOF OF SERVICE

| | DATE | PLACE | |
|---|---|---|---|
| **SERVED** | | | |
| **SERVED ON (PRINT NAME)** | | MANNER OF SERVICE | |
| **SERVED BY (PRINT NAME)** | | TITLE | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
               DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause(c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## INSTRUCTIONS

1.     As used herein, the term "Sierra Ventures" or "You" refers to the entity known as Sierra Ventures VII, L.P., a California Limited Partnership, located at 2884 Sand Hill Rd., Ste. 100, Menlo Park, CA 94025, including its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, representatives, contractors, agents, employees, servants, officers, directors, and trustees, as well as activities under common control with Sierra Ventures and any other individual or company acting on behalf of Sierra Ventures.

2.     As used herein, the term "TEOCO" refers to Plaintiff and Counterclaim Defendant TEOCO Corporation, including its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, representatives, contractors, agents, employees, servants, officers, directors, including Counterclaim Defendant Atul Jain, and trustees, as well as activities under common control with TEOCO and any other individual or company acting on TEOCO's behalf.

3.     As used herein, the term "Razorsight" refers to Defendant Razorsight Corporation, including Razorsight's parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, representatives, contractors, agents, employees, servants, officers, directors, and trustees, as well as activities under common control with Razorsight and any other individual or company acting on Razorsight's behalf, including without limitation Razorsight India Private Limited, Tech Gurus & Entrepreneurs, Inc. ("TG&E") and Nexus Innovative Solutions Company ("NISCO").

4.     As used herein, the term "Sundeep Sanghavi" refers to Defendant Sundeep Sanghavi, also previously known as Sundip Sanghavi.

1

5.    As used herein, the term "Shital Sanghavi" refers to Defendant Shital Sanghavi, also previously known as Sonia Sanghavi.

6.    As used herein, the term "the Litigation" refers to the case currently pending in the Eastern District of Virginia, styled *TEOCO Corporation v. Razorsight Corporation, Sundeep Sanghavi and Shital Sanghavi*, Case No. 1:07cv887 (CMH/BRP), and all claims, counterclaims and defenses asserted therein.

7.    As used herein, the term "Sage Management" refers to the entity known as Sage Management, Inc. of 2620 Wilson Boulevard, 3rd Floor, Arlington, VA 22201, including its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, representatives, contractors, agents, employees, servants, officers, directors, and trustees, as well as activities under common control with Sage Management and any other individual or company acting on behalf of Sage Management.

8.    As used herein, the term "document(s)" includes all "writings" and "recordings," to the broadest extent permitted by Rule 34 of the Federal Rules of Civil Procedure, including without limitation the originals (absent any original, a copy) of any recordation of any intelligence or information, whether handwritten, typed, printed or otherwise visually or aurally reproduced, letters, compilations, data, notebooks, laboratory notebooks, work papers, graphs, charts, blueprints, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings (including photographs), diaries, sales literature, advertising literature, agreements, minutes of meetings, punch cards, magnetic tape or wire, other machine producible records including films, computer disks and files, software, electronic mail, videotapes and sound reproductions, printout sheets, summaries or records of telephone conversations, personal conversations or interviews, and/or any and all other writings, typings, printings, drafts, red-

2

lines, mark-ups, margin notes, copies and/or mechanical or photographic reproductions or

recordations thereof in your possession, custody or control, or otherwise reasonably available to

you, and/or any of its representatives, or known to any of your representatives, whether or not

prepared by them.

9.    As used herein, the term "communication" means any transmission, conveyance,

or exchange of information whether by written, oral, or other means, including but not limited to

electronic communications and electronic mail.

10.    As used herein, the terms "evidence," "evidencing," "concern," "refer to," "relate

to," "concerns," "refers to," "relates to," "concerning," "referring to," or "relating to" shall mean

summarize, demonstrate, constitute, reflect, contain, study, analyze, consider, explain, mention,

show, discuss, describe, comment upon, or result from.

11.    As used herein, when referring to a person, to "identify" means to state the

person's full name, present or last known address, and, when referring to a natural person,

additionally, the present or last known place of employment. If the business and home telephone

numbers are known to the answering party, and if the person is not a party or present employee

of a party, said telephone numbers shall be provided. Once a person has been identified in

accordance with this subparagraph, only the name of the person need be listed in response to

subsequent discovery requesting the identification of that person. When referring to documents,

to "identify" means to state the: (i) type of document; (ii) general subject matter; (iii) date of the

document; and (iv) author(s), addressee(s), and recipient(s) or, alternatively, to produce the

document.

12.    If You assert a claim of privilege in objecting to any document request or part

thereof, and a document is not provided on the basis of such an assertion, identify with specificity

3

the nature of the privilege (including, as appropriate, work product) that is being claimed, and

provide the following information for each such document in a "privileged documents log" or

similar format:

       (i)     the type of document;

      (ii)    the general subject matter of the document;

     (iii)    the date of the document;

     (iv)    the author(s) of the document;

      (v)    the addressee(s) and any other recipient(s) of the document; and

     (vi)    the custodian of the document, where applicable.

13.    A copy of the protective order that has been issued in the Litigation is attached.

To the extent that any documents produced are deemed confidential and You wish them to be

handled as such, please review the protective order and comply with its marking and notice

provisions.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1.    All documents relating to Sierra Ventures' ownership interest in Razorsight, including

    without limitation any shareholder agreements or contracts.

2.    All documents relating to Sundeep Sanghavi's ownership interest in Razorsight,

    including without limitation any shareholder agreements or contracts.

3.    All documents relating to Shital Sanghavi's ownership interest in Razorsight, including

    without limitation any shareholder agreements or contracts.

4.    All documents relating to any funding of Razorsight by Sierra Ventures.

5.    All documents relating to or evidencing any communications between Sierra Ventures

    and Sundeep Sanghavi.

4

6. All documents relating to or evidencing any communications between Sierra Ventures and Shital Sanghavi.

7. All documents relating to or evidencing any communications between Sierra Ventures and any employee or former employee of Razorsight regarding Sundeep Sanghavi.

8. All documents relating to or evidencing any communications between Sierra Ventures and any employee or former employee of Razorsight regarding Shital Sanghavi.

9. All documents relating to or evidencing any communications between Sierra Ventures and any employee or former employee of Razorsight regarding the Litigation or the claims asserted therein.

10. All documents relating to the Litigation or the claims asserted therein.

11. All documents mentioning, referring to, regarding, or discussing TEOCO.

12. All documents mentioning, referring to, regarding, or discussing Sage Management.

13. All documents evidencing the corporate structure and relationship of Sierra Ventures and its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations.

5

**Issued by the**
# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEOCO CORPORATION | )    SUBPOENA IN A CIVIL CASE |
|     Plaintiff, | ) |
| | )    Case pending in: |
|     v. | ) |
| | )    **EASTERN DISTRICT OF VIRGINIA** |
| RAZORSIGHT CORPORATION, SUNDEEP SANGHAVI | )    **(Case No. 1:07cv887 CMH/BRP)** |
| AND SHITAL SANGHAVI. | ) |
| | ) |
|     Defendants. | ) |

TO:    **SIERRA VENTURES VIII-B, L.P.**
          **2884 SAND HILL ROAD, STE. 100**
          **MENLO PARK, CA 94025**
          **C/O MICHAEL J. KLISCH, ESQ.**
          **COOLEY GODWARD KRONISH LLP**
          **777 6TH STREET N.W., SUITE 1100**
          **WASHINGTON, DC 20001**

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **SEE ATTACHED SCHEDULE A**

| PLACE | DATE AND TIME |
|---|---|
| **Venable LLP** | **February 29, 2008** |
| **2049 Century Park East, Suite 2100** | |
| **Los Angeles, CA 90067** | |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Julie Petruzzelli*       Attorney for Plaintiff | Feb 15, 2008 |

ISSUING OFFICER'S NAME AND PHONE NUMBER
Julie Petruzzelli   202-344-4010

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                          DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause(c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**SCHEDULE A**

**INSTRUCTIONS**

1.    As used herein, the term "Sierra Ventures" or "You" refers to the entity known as Sierra Ventures VIII-B, L.P., a California Limited Partnership, located at 2884 Sand Hill Rd., Ste. 100, Menlo Park, CA 94025, including its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, representatives, contractors, agents, employees, servants, officers, directors, and trustees, as well as activities under common control with Sierra Ventures and any other individual or company acting on behalf of Sierra Ventures.

2.    As used herein, the term "TEOCO" refers to Plaintiff and Counterclaim Defendant TEOCO Corporation, including its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, representatives, contractors, agents, employees, servants, officers, directors, including Counterclaim Defendant Atul Jain, and trustees, as well as activities under common control with TEOCO and any other individual or company acting on TEOCO's behalf.

3.    As used herein, the term "Razorsight" refers to Defendant Razorsight Corporation, including Razorsight's parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, representatives, contractors, agents, employees, servants, officers, directors, and trustees, as well as activities under common control with Razorsight and any other individual or company acting on Razorsight's behalf, including without limitation Razorsight India Private Limited, Tech Gurus & Entrepreneurs, Inc. ("TG&E") and Nexus Innovative Solutions Company ("NISCO").

4.    As used herein, the term "Sundeep Sanghavi" refers to Defendant Sundeep Sanghavi, also previously known as Sundip Sanghavi.

5.    As used herein, the term "Shital Sanghavi" refers to Defendant Shital Sanghavi, also previously known as Sonia Sanghavi.

6.    As used herein, the term "the Litigation" refers to the case currently pending in the Eastern District of Virginia, styled *TEOCO Corporation v. Razorsight Corporation, Sundeep Sanghavi and Shital Sanghavi*, Case No. 1:07cv887 (CMH/BRP), and all claims, counterclaims and defenses asserted therein.

7.    As used herein, the term "Sage Management" refers to the entity known as Sage Management, Inc. of 2620 Wilson Boulevard, 3rd Floor, Arlington, VA 22201, including its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, representatives, contractors, agents, employees, servants, officers, directors, and trustees, as well as activities under common control with Sage Management and any other individual or company acting on behalf of Sage Management.

8.    As used herein, the term "document(s)" includes all "writings" and "recordings," to the broadest extent permitted by Rule 34 of the Federal Rules of Civil Procedure, including without limitation the originals (absent any original, a copy) of any recordation of any intelligence or information, whether handwritten, typed, printed or otherwise visually or aurally reproduced, letters, compilations, data, notebooks, laboratory notebooks, work papers, graphs, charts, blueprints, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings (including photographs), diaries, sales literature, advertising literature, agreements, minutes of meetings, punch cards, magnetic tape or wire, other machine producible records including films, computer disks and files, software, electronic mail, videotapes and sound reproductions, printout sheets, summaries or records of telephone conversations, personal conversations or interviews, and/or any and all other writings, typings, printings, drafts, red-

lines, mark-ups, margin notes, copies and/or mechanical or photographic reproductions or recordations thereof in your possession, custody or control, or otherwise reasonably available to you, and/or any of its representatives, or known to any of your representatives, whether or not prepared by them.

9.    As used herein, the term "communication" means any transmission, conveyance, or exchange of information whether by written, oral, or other means, including but not limited to electronic communications and electronic mail.

10.    As used herein, the terms "evidence," "evidencing," "concern," "refer to," "relate to," "concerns," "refers to," "relates to," "concerning," "referring to," or "relating to" shall mean summarize, demonstrate, constitute, reflect, contain, study, analyze, consider, explain, mention, show, discuss, describe, comment upon, or result from.

11.    As used herein, when referring to a person, to "identify" means to state the person's full name, present or last known address, and, when referring to a natural person, additionally, the present or last known place of employment. If the business and home telephone numbers are known to the answering party, and if the person is not a party or present employee of a party, said telephone numbers shall be provided. Once a person has been identified in accordance with this subparagraph, only the name of the person need be listed in response to subsequent discovery requesting the identification of that person. When referring to documents, to "identify" means to state the: (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s) or, alternatively, to produce the document.

12.    If You assert a claim of privilege in objecting to any document request or part thereof, and a document is not provided on the basis of such an assertion, identify with specificity

3

the nature of the privilege (including, as appropriate, work product) that is being claimed, and

provide the following information for each such document in a "privileged documents log" or

similar format:

      (i)     the type of document;

      (ii)    the general subject matter of the document;

      (iii)   the date of the document;

      (iv)   the author(s) of the document;

      (v)    the addressee(s) and any other recipient(s) of the document; and

      (vi)   the custodian of the document, where applicable.

13.    A copy of the protective order that has been issued in the Litigation is attached.

To the extent that any documents produced are deemed confidential and You wish them to be

handled as such, please review the protective order and comply with its marking and notice

provisions.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1.    All documents relating to Sierra Ventures' ownership interest in Razorsight, including

without limitation any shareholder agreements or contracts.

2.    All documents relating to Sundeep Sanghavi's ownership interest in Razorsight,

including without limitation any shareholder agreements or contracts.

3.    All documents relating to Shital Sanghavi's ownership interest in Razorsight, including

without limitation any shareholder agreements or contracts.

4.    All documents relating to any funding of Razorsight by Sierra Ventures.

5.    All documents relating to or evidencing any communications between Sierra Ventures

and Sundeep Sanghavi.

4

6. All documents relating to or evidencing any communications between Sierra Ventures and Shital Sanghavi.

7. All documents relating to or evidencing any communications between Sierra Ventures and any employee or former employee of Razorsight regarding Sundeep Sanghavi.

8. All documents relating to or evidencing any communications between Sierra Ventures and any employee or former employee of Razorsight regarding Shital Sanghavi.

9. All documents relating to or evidencing any communications between Sierra Ventures and any employee or former employee of Razorsight regarding the Litigation or the claims asserted therein.

10. All documents relating to the Litigation or the claims asserted therein.

11. All documents mentioning, referring to, regarding, or discussing TEOCO.

12. All documents mentioning, referring to, regarding, or discussing Sage Management.

13. All documents evidencing the corporate structure and relationship of Sierra Ventures and its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations.

5

**Issued by the**
# UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEOCO CORPORATION ) | **SUBPOENA IN A CIVIL CASE** |
| ) | |
| Plaintiff, ) | **Case pending in:** |
| ) | |
| v. ) | **EASTERN DISTRICT OF VIRGINIA** |
| ) | **(Case No. 1:07cv887 CMH/BRP)** |
| RAZORSIGHT CORPORATION, SUNDEEP SANGHAVI ) | |
| AND SHITAL SANGHAVI. ) | |
| ) | |
| Defendants. ) | |

TO:     SIERRA VENTURES VIII-A, L.P.
        2884 SAND HILL ROAD, STE. 100
        MENLO PARK, CA 94025
        C/O MICHAEL J. KLISCH, ESQ.
        COOLEY GODWARD KRONISH LLP
        777 6TH STREET N.W., SUITE 1100
        WASHINGTON, DC 20001

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **SEE ATTACHED SCHEDULE A**

| PLACE | DATE AND TIME |
|---|---|
| Venable LLP | **February 29, 2008** |
| 2049 Century Park East, Suite 2100 | |
| Los Angeles, CA 90067 | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Julie A. Petruzzelli*    Attorney for Plaintiff | Feb 15, 2008 |
| ISSUING OFFICER'S NAME AND PHONE NUMBER | |
| Julie Petruzzelli    202-344-4010 | |

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

## PROOF OF SERVICE

| | DATE | PLACE | |
|---|---|---|---|
| **SERVED** | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

SIGNATURE OF SERVER
_____

ADDRESS OF SERVER
_____
_____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause(c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## INSTRUCTIONS

1.      As used herein, the term "Sierra Ventures" or "You" refers to the entity known as Sierra Ventures VIII-A, L.P., a California Limited Partnership, located at 2884 Sand Hill Rd., Ste. 100, Menlo Park, CA 94025, including its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, representatives, contractors, agents, employees, servants, officers, directors, and trustees, as well as activities under common control with Sierra Ventures and any other individual or company acting on behalf of Sierra Ventures.

2.      As used herein, the term "TEOCO" refers to Plaintiff and Counterclaim Defendant TEOCO Corporation, including its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, representatives, contractors, agents, employees, servants, officers, directors, including Counterclaim Defendant Atul Jain, and trustees, as well as activities under common control with TEOCO and any other individual or company acting on TEOCO's behalf.

3.      As used herein, the term "Razorsight" refers to Defendant Razorsight Corporation, including Razorsight's parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, representatives, contractors, agents, employees, servants, officers, directors, and trustees, as well as activities under common control with Razorsight and any other individual or company acting on Razorsight's behalf, including without limitation Razorsight India Private Limited, Tech Gurus & Entrepreneurs, Inc. ("TG&E") and Nexus Innovative Solutions Company ("NISCO").

4.      As used herein, the term "Sundeep Sanghavi" refers to Defendant Sundeep Sanghavi, also previously known as Sundip Sanghavi.

1

5.    As used herein, the term "Shital Sanghavi" refers to Defendant Shital Sanghavi, also previously known as Sonia Sanghavi.

6.    As used herein, the term "the Litigation" refers to the case currently pending in the Eastern District of Virginia, styled *TEOCO Corporation v. Razorsight Corporation, Sundeep Sanghavi and Shital Sanghavi*, Case No. 1:07cv887 (CMH/BRP), and all claims, counterclaims and defenses asserted therein.

7.    As used herein, the term "Sage Management" refers to the entity known as Sage Management, Inc. of 2620 Wilson Boulevard, 3rd Floor, Arlington, VA 22201, including its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations thereof, representatives, contractors, agents, employees, servants, officers, directors, and trustees, as well as activities under common control with Sage Management and any other individual or company acting on behalf of Sage Management.

8.    As used herein, the term "document(s)" includes all "writings" and "recordings," to the broadest extent permitted by Rule 34 of the Federal Rules of Civil Procedure, including without limitation the originals (absent any original, a copy) of any recordation of any intelligence or information, whether handwritten, typed, printed or otherwise visually or aurally reproduced, letters, compilations, data, notebooks, laboratory notebooks, work papers, graphs, charts, blueprints, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings (including photographs), diaries, sales literature, advertising literature, agreements, minutes of meetings, punch cards, magnetic tape or wire, other machine producible records including films, computer disks and files, software, electronic mail, videotapes and sound reproductions, printout sheets, summaries or records of telephone conversations, personal conversations or interviews, and/or any and all other writings, typings, printings, drafts, red-

2

lines, mark-ups, margin notes, copies and/or mechanical or photographic reproductions or recordations thereof in your possession, custody or control, or otherwise reasonably available to you, and/or any of its representatives, or known to any of your representatives, whether or not prepared by them.

9.     As used herein, the term "communication" means any transmission, conveyance, or exchange of information whether by written, oral, or other means, including but not limited to electronic communications and electronic mail.

10.    As used herein, the terms "evidence," "evidencing," "concern," "refer to," "relate to," "concerns," "refers to," "relates to," "concerning," "referring to," or "relating to" shall mean summarize, demonstrate, constitute, reflect, contain, study, analyze, consider, explain, mention, show, discuss, describe, comment upon, or result from.

11.    As used herein, when referring to a person, to "identify" means to state the person's full name, present or last known address, and, when referring to a natural person, additionally, the present or last known place of employment. If the business and home telephone numbers are known to the answering party, and if the person is not a party or present employee of a party, said telephone numbers shall be provided. Once a person has been identified in accordance with this subparagraph, only the name of the person need be listed in response to subsequent discovery requesting the identification of that person. When referring to documents, to "identify" means to state the: (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s) or, alternatively, to produce the document.

12.    If You assert a claim of privilege in objecting to any document request or part thereof, and a document is not provided on the basis of such an assertion, identify with specificity

3

the nature of the privilege (including, as appropriate, work product) that is being claimed, and

provide the following information for each such document in a "privileged documents log" or

similar format:

      (i)    the type of document;

      (ii)    the general subject matter of the document;

      (iii)    the date of the document;

      (iv)    the author(s) of the document;

      (v)    the addressee(s) and any other recipient(s) of the document; and

      (vi)    the custodian of the document, where applicable.

13.    A copy of the protective order that has been issued in the Litigation is attached.

To the extent that any documents produced are deemed confidential and You wish them to be

handled as such, please review the protective order and comply with its marking and notice

provisions.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1.    All documents relating to Sierra Ventures' ownership interest in Razorsight, including
without limitation any shareholder agreements or contracts.

2.    All documents relating to Sundeep Sanghavi's ownership interest in Razorsight,
including without limitation any shareholder agreements or contracts.

3.    All documents relating to Shital Sanghavi's ownership interest in Razorsight, including
without limitation any shareholder agreements or contracts.

4.    All documents relating to any funding of Razorsight by Sierra Ventures.

5.    All documents relating to or evidencing any communications between Sierra Ventures
and Sundeep Sanghavi.

4

6.    All documents relating to or evidencing any communications between Sierra Ventures and Shital Sanghavi.

7.    All documents relating to or evidencing any communications between Sierra Ventures and any employee or former employee of Razorsight regarding Sundeep Sanghavi.

8.    All documents relating to or evidencing any communications between Sierra Ventures and any employee or former employee of Razorsight regarding Shital Sanghavi.

9.    All documents relating to or evidencing any communications between Sierra Ventures and any employee or former employee of Razorsight regarding the Litigation or the claims asserted therein.

10.    All documents relating to the Litigation or the claims asserted therein.

11.    All documents mentioning, referring to, regarding, or discussing TEOCO.

12.    All documents mentioning, referring to, regarding, or discussing Sage Management.

13.    All documents evidencing the corporate structure and relationship of Sierra Ventures and its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **TEOCO Corporation,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **Razorsight Corporation, Sundeep** | ) | |
| **Sanghavi and Shital Sanghavi,** | ) | |
| | ) | |
| Defendants. | ) | **Case No.: 1:07cv887 CMH/BRP** |
| ------------------------------------ | ) | |
| **Razorsight Corporation,** | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **TEOCO Corporation and** | ) | |
| **Atul Jain,** | ) | |
| | ) | |
| Counterclaim- | ) | |
| Defendants. | ) | |

## THIRD AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, TEOCO Corporation ("TEOCO" or "Plaintiff"), hereby files its Third Amended

Complaint against Defendants Razorsight Corporation, Sundeep Sanghavi and Shital Sanghavi

("Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for preliminary and permanent injunctive relief, federal

copyright infringement under 17 U.S.C. §§ 101 et seq., violation of the Federal Computer Fraud

and Abuse Act under 18 U.S.C. § 1030, misappropriation of trade secret under VA Code Ann. §§

EXHIBIT 4

59.1-336 et seq., breach of contract, breach of the duty of loyalty, and violation of the Virginia

Business Conspiracy Act under VA Code Ann. §§ 18.2-499 et seq.

      2.     TEOCO brings this action to prevent the continuing and irreparable harm that

TEOCO is suffering and will continue to suffer due to Defendants' willful infringement of the

copyrights in TEOCO's software and manuals, Defendant Shital Sanghavi's violation of the

Federal Computer Fraud and Abuse Act, Defendants' misappropriation of TEOCO's trade

secrets and other proprietary materials and data, Defendants' conspiracy to willfully and

maliciously injure TEOCO in its reputation, trade, business, and profession, and Defendants'

breach of contract and Defendants Sundeep Sanghavi and Shital Sanghavi's breach of their duty

of loyalty.

**THE PARTIES**

      3.     Plaintiff TEOCO is a Delaware corporation with its headquarters and principal

place of business at 12150 Monument Drive, Suite 400, Fairfax, Virginia 22033.

      4.     Defendant Razorsight is a Delaware corporation with its headquarters and

principal place of business at 3926 Pender Drive, Suite 200, Fairfax, Virginia 22030. It also has

an office located at The Old Judge Building, 710 North Second Street, St. Louis, Missouri

63102. Further, Razorsight has an Indian subsidiary, Razorsight India Private Limited, with an

office located at 'A' Wing, 3rd Floor, Divyashree Chambers, No.11, O'Shaughnessy Road,

Bangalore - 560 025, India.

      5.     Defendant Sundeep Sanghavi is an individual residing at 4911 Sammy Joe Dr.,

Fairfax, Virginia 22030. He is presently the Chairman and Founder of Razorsight. Defendant

Sundeep Sanghavi has also previously been known as Sandip Sanghavi.

6.     Defendant Shital Sanghavi is an individual residing at 4911 Sammy Joe Dr.,
Fairfax, Virginia 22030.  Defendant Shital Sanghavi has also previously been known as Sonia
Sanghavi.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28
U.S.C. §§ 1331 and 1338 and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.     This Court has personal jurisdiction over Defendants in that each of them has
committed acts within Virginia and this judicial district giving rise to this action, Defendant
Razorsight is headquartered and conducts business in this judicial district, and Defendants Shital
Sanghavi and Sundeep Sanghavi both reside in this judicial district, such that the exercise of
personal jurisdiction over each Defendant would not offend due process.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c)
and 1400(a) because each Defendant has committed acts within this judicial district giving rise to
the action, Defendant Razorsight is headquartered and conducts business in this judicial district,
Defendants Shital Sanghavi and Sundeep Sanghavi reside and conduct business in this judicial
district, and Defendants' actions have injured Plaintiff, whose headquarters is in this judicial
district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### Plaintiff

10.     Plaintiff TEOCO was incorporated in 1994 as Strategic Technology Group, Inc., a
Virginia corporation.  In 1998, Strategic Technology Group, Inc. changed its name to TEOCO
Corporation, a Virginia corporation.  In January 2002, the Virginia corporation merged into
TEOCO Corporation, a Delaware corporation established for that purpose.

11.    TEOCO (an acronym for "The Employee Owned Company") is a company of

about 150 employees with over $30 million in annual revenue. TEOCO's primary business is in

the telecommunications cost management area. Specifically, TEOCO uses its proprietary

software, as well as professional services, to help its clients manage their telecommunications

expenses. Over the past 13 years, TEOCO has developed several application software solutions

and services, along with accompanying documentation, for this purpose. Now, TEOCO is a

recognized leading provider of network cost management, revenue assurance and additional

business intelligence solutions. TEOCO has earned recognition as the premier provider of cost

and revenue management solutions to the telecommunications industry and it also provides

auditing services and software solutions to many premier global cable operators. TEOCO has

twice been ranked in Inc. Magazine's List of 500 of the fastest growing privately held

companies.

12.    TEOCO has developed and owns significant "Proprietary Information." Its

Proprietary Information includes, but is not limited to, copyrighted works of software and related

documentation. Such Proprietary Information includes, but is not limited to, any non-

copyrightable algorithms, data structures, protocols, specifications, architecture, flowcharts,

pseudo-code, symbolic representations, modules, subroutines, and other ideas, procedures,

processes, systems, methods of operation, concepts, principles and discoveries that TEOCO used

to develop its works of software and/or are embedded within TEOCO's works of software.

Proprietary Information also includes, but is not limited to, confidential information concerning

TEOCO's customers and potential customers, business plans, operational and software

development methodology, and the manner and use of TEOCO's copyrighted works and non-

copyrighted materials and methodologies to service its clients. Proprietary Information includes,

but is not limited to, TEOCO "trade secrets" as defined by the Virginia Uniform Trade Secrets Act.

13.    One of TEOCO's primary lines of business is the Communications & Entertainment Solutions group, which distributes and supports TEOCO's BillTrak Pro™ software ("BillTrak Pro™").

14.    TEOCO's BillTrak Pro™ is a robust network cost management software application that automates and manages the entire network cost lifecycle by importing detailed electronic invoice data, auditing and analyzing the data, and then facilitating the payment process. BillTrak Pro™ allows users to fully manage their carrier and network costs to automate invoice management, reconciliation, dispute creation and cost accounting. The system enables customers to view up-to-date cost information and allows educated decisions for network planning and optimization.

15.    TEOCO spent significant resources and time developing BillTrak Pro™. The software, as it is now, took approximately nine years and over $50 million dollars to develop.

16.    TEOCO does not give away its software content or services for free, but rather licenses BillTrak Pro™, and access to BillTrak Pro™, to customers via Application Service Provider agreements, for a fee or fees. Those customers enter into an agreement prohibiting the reproduction, replication, distribution, reverse engineering of any part of BillTrak Pro™, including its supporting software modules.

17.    BillTrak Pro™ is made up of several different components or modules, including without limitation, the Data Model, Data Model Scripts, DataLoader, and the Sequences Procedure. The BillTrak Pro™ Data Model is the model by which the data is organized, analyzed, and evaluated. The Data Model Scripts are the software code that transform this

-5-

information into an actual BillTrak Pro™ data base structure. The Data Model scripts include

the BillTrak Pro™ Account Coding Data Model Script, the BillTrak Pro™ Invoice Data Model

Script, and the BillTrak Pro™ Workflow Data Model Script (hereinafter, collectively the

"BillTrak Pro™ Data Model Scripts"). The DataLoader consists of several different modules

that load data from invoices into the BillTrak Pro™ database. The DataLoader modules include

an EDI 811 Loader module, a CABS loader module, and a SECAB Loader module (hereinafter,

collectively the "BillTrak Pro™ DataLoader"). The BillTrak Pro™ Sequences Procedure is used

to generate a Structured Query Language ("SQL") script, which recreates the Oracle sequences

for the BillTrak Pro™ database.

      18.    The BillTrak Pro™ Data Model is an original work of authorship developed by

TEOCO and its employees as works for hire, and is owned by TEOCO. TEOCO marks the

BillTrak Pro™ Data Model as proprietary, owns all of the copyrights in the BillTrak Pro™ Data

Model, and has filed for registration of its copyrights in the BillTrak Pro™ Data Model with the

United States Library of Congress' Copyright Office ("Copyright Office").

      19.    The BillTrak Pro™ Data Model Scripts are original works of authorship

developed by TEOCO and its employees as works for hire, and are owned by TEOCO. TEOCO

marks the software as proprietary, owns all of the copyrights in the BillTrak Pro™ Data Model

Scripts, and has filed for registration of its copyrights in the BillTrak Pro™ Data Model Scripts

with the Copyright Office.

      20.    The source code for the BillTrak Pro™ Data Model Scripts is available only to

TEOCO employees. The BillTrak Pro™ Data Model Scripts source code is a trade secret

carefully protected by TEOCO. The BillTrak Pro™ Data Model Scripts source code derives

economic value, actual or potential, from not being generally known to, and not being readily

ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. In particular, if the BillTrak Pro™ Data Model Scripts source code was known to companies other than TEOCO, it could be used to replicate the BillTrak Pro™ Data Model. Those parties would obtain economic value from that use.

21.    The BillTrak Pro™ DataLoader is an original work of authorship developed by TEOCO and its employees as works for hire, and is owned by TEOCO. TEOCO marks the software as proprietary and owns all of the copyrights in the BillTrak Pro™ Data Loader. TEOCO has filed for registration of its copyrights in DataLoader, including the EDI 811 Loader module, CABS Loader module, and SECAB Loader module, with the Copyright Office.

22.    The source code for the BillTrak Pro™ DataLoader is available only to TEOCO employees. The BillTrak Pro™ DataLoader source code is a trade secret carefully protected by TEOCO. The BillTrak Pro™ DataLoader source code derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. In particular, if the BillTrak Pro™ DataLoader source code was known to companies other than TEOCO, it could be used for loading data in different formats, such as EDI 811, and for the development of their own software. Those parties would obtain economic value from that use.

23.    The BillTrak Pro™ Sequences Procedure is an original work of authorship developed by TEOCO and its employees as works for hire, and is owned by TEOCO. TEOCO marks the software as proprietary and owns all of the copyrights in the BillTrak Pro™ Sequences Procedure. TEOCO has filed for registration of its copyrights in the BillTrak Pro™ Sequences Procedure with the Copyright Office.

24.    The source code for the BillTrak Pro™ Sequences Procedure is available only to

TEOCO employees.  The BillTrak Pro™ Sequences Procedure source code is a trade secret

carefully protected by TEOCO.  The BillTrak Pro™ Sequences Procedure source code derives

economic value, actual or potential, from not being generally known to, and not being readily

ascertainable by proper means by, other persons who can obtain economic value from its

disclosure or use.  In particular, if the BillTrak Pro™ Sequences Procedure source code was

known to companies other than TEOCO, it could be used to replicate a SQL script, which

recreates the relational sequences for the database.  Those parties would obtain economic value

from that use.

25.    When BillTrak Pro™ is licensed, the customers are also given access to several

manuals that accompany BillTrak Pro™, including a User Guide, an Administrator Guide, an

Audit Guide, a Report Guide, a Query Guide, a Transaction Effects Manual, and a Screens to

Data Model Source (the "BillTrak Pro™ Manuals").

26.    The BillTrak Pro™ Manuals are original works of authorship developed by

TEOCO and its employees as works for hire, and the Manuals are owned by TEOCO.  TEOCO

marks the BillTrak Pro™ Manuals as proprietary, owns all of the copyrights in the BillTrak

Pro™ Manuals, and has filed for registration of its copyrights in the BillTrak Pro™ Manuals

with the Copyright Office.

27.    In addition to software that TEOCO has developed for customers, TEOCO also

has developed software known as STIGMA ("STIGMA"), which is proprietary software that

TEOCO uses for internal compliance testing only.

28.    STIGMA is an original work of authorship developed by TEOCO and its

employees as works for hire, and STIGMA is owned by TEOCO.  TEOCO marks the software as

proprietary, owns all of the copyrights in STIGMA, and has filed for registration of its copyrights in STIGMA with the Copyright Office.

29.    No one outside of TEOCO has authorized access to the STIGMA software. STIGMA is only available to TEOCO employees through access to a password protected Local Area Network. STIGMA is never distributed outside of the company and cannot be licensed. STIGMA is a trade secret carefully protected by TEOCO. STIGMA derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. If STIGMA were known to companies other than TEOCO, it could be used for internal testing, quality assurance on manually, optically and electronically generated data, and for development of additional software. Those parties would obtain economic value from that use.

30.    TEOCO has also developed proprietary coding standards and guidelines, including its Java Coding Standard and its Database Coding Standard.

31.    TEOCO's Java Coding Standard is an original work of authorship developed by TEOCO and its employees as works for hire, and is owned by TEOCO. TEOCO owns all of the copyrights in its Java Coding Standard, and has filed for registration of its copyrights in its Java Coding Standard with the Copyright Office.

32.    No one outside of TEOCO has authorized access to TEOCO's Java Coding Standard. The Java Coding Standard is only available to TEOCO employees through access to a password protected Local Area Network. The Java Coding Standard is never distributed outside of the company and cannot be licensed. The Java Coding Standard is a trade secret carefully protected by TEOCO. The Java Coding Standard derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by,

-9-

other persons who can obtain economic value from its disclosure or use. In particular, if the Java

Coding Standard were known to companies other than TEOCO, it could be used as a reference to

replicate TEOCO's naming conventions. Those parties would obtain economic value from that

use.

33.    TEOCO's Database Coding Standard is an original work of authorship developed

by TEOCO and its employees as works for hire, and is owned by TEOCO. TEOCO owns all of

the copyrights in its Database Coding Standard, and has filed for registration of its copyrights in

its Database Coding Standard with the Copyright Office.

34.    No one outside of TEOCO has authorized access to TEOCO's Database Coding

Standard. The Database Coding Standard is only available to TEOCO employees through access

to a password protected Local Area Network. The Database Coding Standard is never

distributed outside of the company and cannot be licensed. The Database Coding Standard is a

trade secret carefully protected by TEOCO. The Database Coding Standard derives economic

value, actual or potential, from not being generally known to, and not being readily ascertainable

by proper means by, other persons who can obtain economic value from its disclosure or use. In

particular, if the Database Coding Standard were known to companies other than TEOCO, it

could be used as a reference to replicate TEOCO's naming conventions. Those parties would

obtain economic value from that use.

35.    TEOCO employees (a) are told that they may not copy or distribute any TEOCO

Proprietary Information, (b) must sign non-disclosure and confidentiality agreements, (c) may

only use TEOCO Proprietary Information for purposes of their employment with TEOCO, (d)

must maintain the confidentiality of the Proprietary Information, (e) must not disclose or

distribute any Proprietary Information to any other person or entity, and (f) must return all

TEOCO materials when their employment with TEOCO ceases and sign a certificate that they have so complied.

### Defendant Sundeep Sanghavi

36.    Defendant Sundeep Sanghavi was employed at TEOCO from September 2, 1997 until April 6, 2001.

37.    Defendant Sundeep Sanghavi signed an Employment Agreement with Strategic Technologies Corporation (now TEOCO) on September 2, 1997, when he accepted part-time employment, and he signed another copy of the same agreement on December 29, 1997, when he began full-time employment at TEOCO.  Defendant Sundeep Sanghavi also signed the "Non-Disclosure/Assignment Agreement" attached to the Employment Agreement.  He signed one on September 25, 1997, and signed another copy of the same agreement on December 29, 1997.

38.    The Employment Agreement with Defendant Sundeep Sanghavi provides, *inter alia,* that he agrees to be bound by the provisions of the Non-Disclosure/Assignment Agreement attached thereto. The Non-Disclosure/Assignment Agreement provides that Defendant Sundeep Sanghavi, *inter alia,*

a)    would learn and have access to proprietary information, including trade secrets and copyrighted materials, such as software, firmware and business procedures, and that the Proprietary Information was owned exclusively by Plaintiff,

b)    that he could only use that proprietary information in connection with his work for Plaintiff,

c)    that he had an obligation, both while he was employed and thereafter, to hold the Proprietary Information in confidence and not disclose or reveal that proprietary information to any person or entity, and

-11-

        d)     that he had an obligation to return all materials reflecting the proprietary information should he no longer be employed by Plaintiff.

    39.    The Employment Agreement provides, Paragraph 8, that it shall be governed by and construed under the laws of the Commonwealth of Virginia.

    40.    In April 2001, Defendant Sundeep Sanghavi left the employ of TEOCO. Prior to leaving the employ of TEOCO, Defendant Sundeep Sanghavi founded a company called Tech Gurus & Entrepreneurs, Inc. ("TG&E") in November 2000. In August 2001, TG&E changed its name to Nexus Innovative Solutions Company ("NISCO"), and in July 2005, NISCO changed its name to Razorsight.

    41.    Defendant Sundeep Sanghavi has a personal interest separate and apart from the corporate interests of Razorsight.

    42.    In January 2002, Defendant Sundeep Sanghavi approached TEOCO seeking to serve as a marketing representative for TEOCO products. TEOCO agreed, and entered an agreement with NISCO (now, Razorsight) whereby NISCO became a marketing representative of TEOCO, with Defendant Sundeep Sanghavi as an authorized marketing representative. The agreement was signed and entered on January 3, 2002, and terminated on April 3, 2003.

    43.    The Marketing Representative Agreement provides that Defendants Razorsight and Sundeep Sanghavi, *inter alia*,

        a)     would learn and have access to proprietary information, including trade secrets and copyrighted materials, such as software, firmware and business procedures, and that the proprietary information was owned exclusively by Plaintiff,

-12-

b)      had an obligation, both while during the agreement and thereafter, to hold

the proprietary information in confidence and not disclose or reveal that proprietary

information to any person or entity,

c)      must not destroy any proprietary markings or legends, and

d)      that until April 3, 2004, would not compete with TEOCO by, *inter alia*,

developing competitive software, offering interfaces or account coding to TEOCO's

products, or offering competitive services to TEOCO customers.

44.    The Marketing Representative Agreement provides, Paragraph 15(b), that it shall

be governed by and construed under the laws of the Commonwealth of Virginia.

### Defendant Shital Sanghavi

45.    Defendant Shital Sanghavi was employed by TEOCO from March 15, 2000

through September 27, 2002.

46.    Defendant Shital Sanghavi entered and signed an Employment Agreement with

TEOCO on March 15, 2000 and signed the Non-Disclosure/Assignment Agreement attached to

the Employment Agreement on March 17, 2000.  She signed another Employment Agreement

and the Confidentiality and Intellectual Property Assignment Agreement attached thereto on

September 10, 2001.  Additionally, when she left TEOCO on September 27, 2002, she signed a

"Termination Certificate."

47.    The Employment Agreement and Non-Disclosure/Assignment Agreement

attached thereto, and the Employment Agreement and the Confidentiality and Intellectual

Property Assignment Agreement attached thereto, both signed by Defendant Shital Sanghavi,

each provide that Defendant Shital Sanghavi, *inter alia*,

-13-

a)    would learn proprietary information, including trade secrets, such as software, firmware and business procedures, and that the proprietary information was owned exclusively by TEOCO,

b)    that she could only use that proprietary information in connection with her work for TEOCO,

c)    that she had an obligation, both while she was employed and thereafter, to hold the proprietary information in confidence and not disclose or reveal that proprietary information to any person or entity, and

d)    that she had an obligation to return all materials reflecting the proprietary information should she no longer be employed by TEOCO.

48.    Further, upon leaving TEOCO's employ, Defendant Shital Sanghavi signed a Termination Certificate, swearing (a) that she had complied with the Employment Agreements, Non-Disclosure/Assignment Agreements, and Confidentiality and Intellectual Property Assignment Agreement; (b) that she would continue to preserve as confidential TEOCO's Proprietary Information; and (c) that she had returned all materials belonging to TEOCO.

49.    The Employment Agreement of March 15, 2000, provides, Paragraph 8, that it shall be governed by and construed under the laws of the Commonwealth of Virginia.

50.    The Employment Agreement of September 10, 2001, provides, Paragraph 16, that it shall be governed by and construed under the laws of the Commonwealth of Virginia.

**Defendant Razorsight**

51.    Defendant Razorsight was founded in November, 2000 by Defendant Sundeep Sanghavi as Tech Gurus & Entrepreneurs, Inc. ("TG&E") as a Virginia corporation, which then became Nexus Innovative Solutions Company ("NISCO") on August 24, 2001, also a Virginia

corporation. In April, 2005, NISCO merged into a Delaware corporation with the same name created for that purpose. NISCO's name then changed to Razorsight in July, 2005.

52.    Defendant Razorsight is a competitor of TEOCO and similarly provides software solutions and services, along with accompanying documentation, for network cost management, revenue assurance, invoice processing, complete invoice life cycle management and other business intelligence solutions.

53.    Defendant Razorsight has developed software, including but not limited to the Razorsight Automated Invoice Management solutions ("AIM"), and invoice service (including AIM Capture, also known as ILoader, mBill, and by other names) that Razorsight sells, licenses and uses to provide services. Razorsight claims that the AIM solutions "automate the invoice lifecycle management process, reduce the cost of and time for invoice processing, and provide powerful audit capabilities and actionable insight to finance and procurement executives." Razorsight claims that their invoice service AIM Capture "converts unstructured information into structured, usable formats defined by the client. AIM delivers the output in any standardized or client defined format e.g. EDI 810, XML, cXML, Oasis, CSV, CABS etc."

### Defendants' Wrongful Acts

54.    Upon information and belief, Sundeep and Shital Sanghavi agreed and conspired against TEOCO to violate their contractual and common law duties to TEOCO, to misappropriate TEOCO Proprietary Information, and to injure TEOCO through unfair and illicit competition (the "Sanghavi Conspiracy").

55.    Upon information and belief, the Sanghavi Conspiracy began while Sundeep and Shital Sanghavi were employed by TEOCO and continued with the formation of the predecessor

company to co-conspirator Defendant Razorsight. Defendant Sundeep Sanghavi had and has a personal stake in the Sanghavi Conspiracy independent from the interest of Razorsight.

56.    The Sanghavi Conspiracy continued after Sundeep Sanghavi left the employment of TEOCO, continued while he was a Marketing Representative for TEOCO, and continued while Shital Sanghavi was an employee of TEOCO.

57.    The Sanghavi Conspiracy and TEOCO's resultant injury continues today.

58.    Upon information and belief, it was the agreed intent of the conspirators that Razorsight be given access to and copies of TEOCO Proprietary Information, including but not limited to copyrighted works and trade secrets in violation of the Sanghavis' contractual and common law obligations to TEOCO.

59.    Upon information and belief, the purpose of the Sanghavi Conspiracy was to allow Razorsight to obtain the value of TEOCO Proprietary Information without incurring the cost and delay of lawfully developing the same or the cost of purchasing the legal right to use such Proprietary Information, and for the purpose of willfully and maliciously injuring TEOCO.

60.    Upon information and belief, the Proprietary Information that the Sanghavis or one of them impermissibly provided to Razorsight in furtherance of the conspiracy includes, but is not limited to, confidential information concerning TEOCO's customers and potential customers, business plans, operational and software development methodology, non-copyrighted software, and the manner and use of TEOCO's copyrighted works and non-copyrighted software and methodologies to service its clients. This Proprietary Information was obtained and/or provided to Razorsight while either or both Sundeep and Shital Sanghavi were employed by TEOCO. Further, Shital Sanghavi continued to obtain additional TEOCO Proprietary Information after she left TEOCO.

61.    While employed at TEOCO, Defendant Shital Sanghavi attended TEOCO employee team meetings ("Team Meetings") where TEOCO Proprietary Information was shared with TEOCO employees.  In particular, several meetings that were held in the months leading up to Defendant Shital Sanghavi's departure from TEOCO (April 4, 2002, June 6, 2002, July 10, 2002, August 1, 2002 and September 5, 2002) disclosed, among other things, TEOCO Proprietary Information, including TEOCO customer information, such as revenue derived from specific customers, prospective customers, prospective revenue from customers, as well as TEOCO financial information, such as operating income, revenues, costs, income statements, financial forecasts, targets, plans, goals, and stock prices.

62.    Upon information and belief, while still employed by TEOCO Defendant Shital Sanghavi disclosed the Proprietary Information that she learned during these, and other, TEOCO Team Meetings to Razorsight.

63.    Upon information and belief, Defendants have improperly used the Proprietary Information from those TEOCO Team Meetings, in order to benefit themselves and harm TEOCO in its reputation, trade, business, and profession.

64.    Upon information and belief, Razorsight knew and knows that the Proprietary Information from those TEOCO Team Meetings is proprietary information of TEOCO.

65.    While employed by TEOCO, Defendant Shital Sanghavi intentionally accessed a protected TEOCO computer and the TEOCO server, using an employee password, and exceeded her authority by making at least one unauthorized copy of the STIGMA object code.  When Defendant Shital Sanghavi left the employment of TEOCO, she took a copy of the STIGMA object code with her.

66.     Defendant Shital Sanghavi, having made an unauthorized copy of the STIGMA object code, impermissibly distributed that object code to Razorsight.

67.     Upon information and belief, Defendants Sundeep Sanghavi and Razorsight conspired with Defendant Shital Sanghavi to have her unlawfully copy and distribute the proprietary STIGMA object code in order to benefit themselves and harm TEOCO in its reputation, trade, business, and profession.

68.     Razorsight unlawfully was, and still is, in possession of the STIGMA object code, and Defendants have impermissibly used the STIGMA object code in the conduct of their business.

69.     Defendant Razorsight has made multiple unauthorized copies of the STIGMA object code and impermissibly distributed it to Razorsight employees who use it in quality assurance in performing their services for clients and in conjunction with the development of software.

70.     Defendants and Razorsight employees know that the STIGMA object code is Proprietary Information of TEOCO.

71.     When Defendant Shital Sanghavi left the employment of TEOCO, she also took a copy of the source code for DataLoader, which includes the EDI 811 Loader and the CABS Loader.

72.     Defendant Shital Sanghavi, having impermissibly made or obtained copies of the BillTrak Pro™ DataLoader source code, then impermissibly distributed it to Razorsight and used it in conjunction with her work as an employee of Razorsight.

73.     Upon information and belief, Defendant Sundeep Sanghavi impermissibly kept at least some portion of the BillTrak Pro™ DataLoader, in violation of his agreements with

-18-

TEOCO and in violation of his duty of loyalty to TEOCO, and has unlawfully displayed and distributed at least some of this Proprietary Information to Razorsight and to its employees, for commercial advantage and private financial gain, and for the purpose of willfully and maliciously injuring TEOCO in its reputation, trade, business, and profession.

74.    Razorsight unlawfully was, and still is, in possession of BillTrak Pro™ DataLoader source code, and has impermissibly used the BillTrak Pro™ DataLoader source code in the conduct of its business.

75.    Defendant Razorsight has made at least one copy of the BillTrak Pro™ DataLoader source code and impermissibly distributed it to at least one Razorsight employee for use in the development of software.

76.    Defendant Shital Sanghavi and other employees at Razorsight impermissibly relied upon BillTrak Pro™ DataLoader source code to develop Online BillViewer for Verizon Communications Inc. and also Razorsight's AIM Capture software and services.

77.    Defendant Razorsight used TEOCO's BillTrak Pro™ DataLoader source code in order to provide a demonstration of a Proof of Concept to Verizon Communications Inc. in June 2003.

78.    In order to enable Razorsight to provide certain audit services to AT&T Inc. in 2004, Defendant Shital Sanghavi and other employees at Razorsight also impermissibly relied upon BillTrak Pro™ DataLoader source code to develop a data loader for use by Razorsight in the loading of invoices for purposes of auditing them.

79.    Upon information and belief, Defendants Sundeep Sanghavi, Shital Sanghavi and Defendant Razorsight and its employees knew and know that the BillTrak Pro™ DataLoader is Proprietary Information of TEOCO.

80.    Defendants Sundeep Sanghavi and Shital Sanghavi possessed, by virtue of their employment by and association with TEOCO, additional proprietary TEOCO information, including and the BillTrak Pro™ Manuals, underlying software data organization and structure, and the BillTrak Pro™ Data Model.

81.    Upon information and belief, both Defendants Sundeep Sanghavi and Shital Sanghavi impermissibly kept at least some portion of the BillTrak Pro™ Manuals, underlying software data organization and structure, and the BillTrak Pro™ Data Model, in violation of their agreements with TEOCO and in violation of their duty of loyalty to TEOCO, and have unlawfully displayed and distributed at least some of this Proprietary Information to each other, to Razorsight and to its employees, for commercial advantage and private financial gain.

82.    Upon information and belief, Defendants Razorsight, Sundeep Sanghavi and Shital Sanghavi impermissibly appropriated, copied, relied upon to build software, and distributed the BillTrak Pro™ Manuals, and the BillTrak Pro™ Data Model.

83.    Upon information and belief, Defendant Sundeep Sanghavi impermissibly maintained copies of the BillTrak Pro™ Manuals, made unauthorized copies of the Manuals, and unlawfully distributed the Manuals to Razorsight employees with the instruction that they should copy and use the Manuals to develop Razorsight's AIM software and other software.

84.    Upon information and belief, Defendant Razorsight and its employees have made unauthorized copies of the BillTrak Pro™ Manuals, further distributed the Manuals, and unlawfully copied and used the Manuals to develop Razorsight's AIM software, ADRAP and other software.

85.    Upon information and belief, Defendant Razorsight and its employees knew and know that the information in the BillTrak Pro™ Manuals is the Proprietary Information of TEOCO.

86.    Upon information and belief, the Defendants conspired to unlawfully copy and distribute the BillTrak Pro™ Manuals in order to benefit themselves and harm TEOCO in its reputation, trade, business, and profession.

87.    Upon information and belief, Razorsight unlawfully was, and still is, in possession of the BillTrak Pro™ Data Model, and Defendants have impermissibly used the Data Model in the conduct of their business.

88.    Upon information and belief, Defendants have made multiple unauthorized copies of the BillTrak Pro™ Data Model and impermissibly distributed it to Razorsight employees in the United States and in India for copying and use in the development of software.

89.    Upon information and belief, Razorsight and its employees knew and know that the BillTrak Pro™ Data Model is Proprietary Information of TEOCO.

90.    Upon information and belief, Defendants conspired to unlawfully copy and distribute the BillTrak Pro™ Data Model in order to benefit themselves and harm TEOCO in its reputation, trade, business, and profession.

91.    While an employee at Razorsight, Shital Sanghavi also obtained a copy of TEOCO's BillTrak Pro™ Data Model Scripts.

92.    Upon information and belief, Shital Sanghavi used TEOCO's BillTrak Pro™ Data Model Scripts as part of her efforts at Razorsight to develop software for Razorsight.

93.    Razorsight unlawfully was, and still is, in possession of the BillTrak Pro™ Data Model Scripts, and has impermissibly used the BillTrak Pro™ Data Model Scripts in the conduct of its business.

94.    While an employee at Razorsight, Shital Sanghavi also obtained a copy of TEOCO's BillTrak Pro™ Sequences Procedure.

95.    Upon information and belief, Shital Sanghavi used TEOCO's BillTrak Pro™ Sequences Procedure as part of her efforts at Razorsight to develop software for Razorsight.

96.    Razorsight unlawfully was, and still is, in possession of the BillTrak Pro™ Sequences Procedure, and has impermissibly used the BillTrak Pro™ Sequences Procedure in the conduct of its business.

97.    Upon information and belief, Shital Sanghavi also received and relied upon as part of her work at Razorsight TEOCO's Database Coding Standard and Java Coding Standard.

98.    Upon information and belief, both Defendants Sundeep Sanghavi and Shital Sanghavi impermissibly kept additional Proprietary Information upon leaving TEOCO's employ or association, in violation of their agreements with TEOCO and in violation of their duty of loyalty to TEOCO, and have unlawfully displayed and distributed at least some Proprietary Information to each other, to Razorsight and to its employees, for commercial advantage and private financial gain, and for the purpose of willfully and maliciously injuring TEOCO.

99.    The above-described wrongful actions of the Sanghavis were undertaken in violation of their contractual and common law obligations to TEOCO.

100.    The above-described wrongful actions of the Defendant Razorsight were undertaken in violation of its contractual obligations to TEOCO.

-22-

101.  Upon information and belief, Defendants intentionally engaged in the above described conduct to unfairly compete with TEOCO, for their own commercial advantage and private financial gain, and for the purpose of willfully and maliciously injuring TEOCO in its reputation, trade, business, and profession, resulting in economic damage to TEOCO, and irreparable harm to TEOCO.

**COUNT I**

**Copyright Infringement of TEOCO's
STIGMA Software**

102.  TEOCO incorporates the prior paragraphs by reference.

103.  STIGMA is an original copyrightable work.  TEOCO has complied in all respects with 17 U.S.C. §101, et seq. and secured the exclusive rights in the work and has filed its copyright registration in the work with the Copyright Office in accordance with its rules and regulations.

104.  TEOCO owns all rights, title and interest in the copyright of STIGMA.

105.  Defendants have infringed and are infringing the copyrights of STIGMA by unlawfully reproducing and distributing identical copies of STIGMA to Razorsight's employees, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

106.  Defendants have infringed and are infringing the copyrights of STIGMA in conjunction with their business, including the use of STIGMA to review invoice files generated by their invoice service, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

107.  Defendants' infringements were and are willful, in bad faith, and executed with full knowledge of TEOCO's copyright, and in conscious disregard for TEOCO's exclusive rights in the protected work.

108.    Defendants' infringements were and are willful and in bad faith disregard of the terms of the TEOCO employment and non-disclosure agreements entered into by Defendants Shital Sanghavi and Sundeep Sanghavi.

109.    TEOCO is entitled to recover Defendants' profits, TEOCO's actual damages, and punitive damages against Defendants.

110.    Defendants' deliberate infringement of TEOCO's copyrights has greatly and irreparably damaged TEOCO, and Defendants will continue to damage TEOCO greatly and irreparably unless enjoined by this Court. In the absence of injunctive relief, TEOCO will have no adequate remedy at law. Accordingly, TEOCO is entitled to a temporary and permanent injunction in accordance with 17 U.S.C. § 502.

## COUNT II

### Copyright Infringement of TEOCO's
### BillTrak Pro™ Manuals

111.    TEOCO incorporates the prior paragraphs by reference.

112.    The BillTrak Pro™ Manuals are original copyrightable works. TEOCO has complied in all respects with 17 U.S.C. §101, et seq. and secured the exclusive rights in the works and has filed its copyright registrations in the works with the Copyright Office in accordance with its rules and regulations.

113.    TEOCO owns all rights, title and interest in the copyrights of the BillTrak Pro™ Manuals.

114.    Upon information and belief, all Defendants have infringed and are infringing the copyrights of the BillTrak Pro™ Manuals by unlawfully reproducing and distributing identical copies of the BillTrak Pro™ Manuals to Razorsight's employees, creating derivative works that infringe upon the BillTrak Pro™ Manuals, and publicly marketing, licensing, selling and using

to provide services those infringing derivative works in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

115. Defendants' infringements were and are willful, in bad faith, and executed with full knowledge of TEOCO's copyrights, and in conscious disregard for TEOCO's exclusive rights in the protected works.

116. Defendants' infringements were and are willful and in bad faith disregard of the terms of the TEOCO employment and non-disclosure agreements entered into by Defendants Shital Sanghavi and Sundeep Sanghavi.

117. TEOCO is entitled to recover Defendants' profits, TEOCO's actual damages, and punitive damages against Defendants.

118. Defendants' deliberate infringement of TEOCO's copyrights has greatly and irreparably damaged TEOCO, and Defendants will continue to damage TEOCO greatly and irreparably unless enjoined by this Court. In the absence of injunctive relief, TEOCO will have no adequate remedy at law. Accordingly, TEOCO is entitled to a temporary and permanent injunction in accordance with 17 U.S.C. § 502.

## COUNT III

### Copyright Infringement of TEOCO's
### BillTrak Pro™ Data Model

119. TEOCO incorporates the prior paragraphs by reference.

120. The BillTrak Pro™ Data Model is an original copyrightable work. TEOCO has complied in all respects with 17 U.S.C. §101, et seq. and secured the exclusive rights in the work and has filed its copyright registrations in the work with the Copyright Office in accordance with its rules and regulations.

121.    TEOCO owns all rights, title and interest in the copyright of the BillTrak Pro™ Data Model.

122.    Upon information and belief, all Defendants have infringed and are infringing the copyrights of the BillTrak Pro™ Data Model by unlawfully reproducing and distributing identical copies of the BillTrak Pro™ Data Model to Razorsight's employees, creating derivative works that infringe upon the Data Model, and publicly marketing, licensing, selling and using to provide services those infringing derivative works in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

123.    Defendants' infringements were and are willful, in bad faith, and executed with full knowledge of TEOCO's copyright, and in conscious disregard for TEOCO's exclusive rights in the protected work.

124.    Defendants' infringements were and are willful and in bad faith disregard of the terms of the TEOCO employment and non-disclosure agreements entered into by Defendants Shital Sanghavi and Sundeep Sanghavi.

125.    TEOCO is entitled to recover Defendants' profits, TEOCO's actual damages, and punitive damages against Defendants.

126.    Defendants' deliberate infringement of TEOCO's copyrights has greatly and irreparably damaged TEOCO, and Defendants will continue to damage TEOCO greatly and irreparably unless enjoined by this Court. In the absence of injunctive relief, TEOCO will have no adequate remedy at law. Accordingly, TEOCO is entitled to a temporary and permanent injunction in accordance with 17 U.S.C. § 502.

## COUNT IV

### Copyright Infringement of TEOCO's
### BillTrak Pro™ Data Model Scripts

127.    TEOCO incorporates the prior paragraphs by reference.

128.    TEOCO's BillTrak Pro™ Data Model Scripts are original copyrightable works.
TEOCO has complied in all respects with 17 U.S.C. §101, et seq. and secured the exclusive
rights in the works and has filed its copyright registrations in the BillTrak Pro™ Data Model
Scripts with the Copyright Office in accordance with its rules and regulations.

129.    TEOCO owns all rights, title and interest in the copyright of the BillTrak Pro™
Data Model Scripts.

130.    Defendants Shital Sanghavi and Razorsight have infringed and are infringing the
copyrights of the BillTrak Pro™ Model Scripts by unlawfully reproducing and distributing
identical copies of one or more of the BillTrak Pro™ Data Model Scripts, in violation of the
United States Copyright Act, 17 U.S.C. §§ 106 et seq.

131.    Upon information and belief, Defendant Sundeep Sanghavi has infringed and is
infringing the copyrights of one or more of the BillTrak Pro™ Data Model Scripts by unlawfully
reproducing and distributing identical copies of the BillTrak Pro™ Data Model Scripts to
Razorsight's employees, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et
seq.

132.    Defendant Razorsight has infringed and is infringing the copyrights of the
BillTrak Pro™ Data Model Scripts by unlawfully using one or more of the BillTrak Pro™ Data
Model Scripts in conjunction with the development of software, in violation of the United States
Copyright Act, 17 U.S.C. §§ 106 et seq.

-27-

133.   Upon information and belief, Defendants have infringed and are infringing the copyrights of one or more of the BillTrak Pro™ Data Model Scripts by unlawfully creating derivative works that infringe upon one or more of the copyrights of the BillTrak Pro™ Data Model Scripts, and publicly marketing, licensing, selling and using to provide services those infringing derivative works in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

134.   Defendants' infringements were and are willful, in bad faith, and executed with full knowledge of TEOCO's copyrights, and in conscious disregard for TEOCO's exclusive rights in the protected work.

135.   Defendants' infringements were and are willful and in bad faith disregard of the terms of the TEOCO employment and non-disclosure agreements entered into by Defendants Shital Sanghavi and Sundeep Sanghavi.

136.   TEOCO is entitled to recover Defendants' profits, TEOCO's actual damages, and punitive damages against Defendants.

137.   Defendants' deliberate infringement of TEOCO's copyrights has greatly and irreparably damaged TEOCO, and Defendants will continue to damage TEOCO greatly and irreparably unless enjoined by this Court.  In the absence of injunctive relief, TEOCO will have no adequate remedy at law.  Accordingly, TEOCO is entitled to a temporary and permanent injunction in accordance with 17 U.S.C. § 502.

## COUNT V

### Copyright Infringement of TEOCO's
### BillTrak Pro™ DataLoader

138.   TEOCO incorporates the prior paragraphs by reference.

139.    TEOCO's BillTrak Pro™ DataLoader is an original copyrightable work. TEOCO has complied in all respects with 17 U.S.C. §101, et seq. and secured the exclusive rights in the work and has filed its copyright registrations in the BillTrak Pro™ DataLoader, including the EDI 811 Loader module, the CABS Loader Module, and the SECAB Loader module, with the Copyright Office in accordance with its rules and regulations.

140.    TEOCO owns all rights, title and interest in the copyright of the BillTrak Pro™ DataLoader.

141.    Defendants Shital Sanghavi and Razorsight have infringed and are infringing the copyrights of the BillTrak Pro™ DataLoader by unlawfully reproducing and distributing identical copies of BillTrak Pro™ DataLoader in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

142.    Upon information and belief, Defendant Sundeep Sanghavi has infringed and is infringing the copyrights of TEOCO's BillTrak Pro™ DataLoader by unlawfully reproducing and distributing identical copies of the BillTrak Pro™ DataLoader to Razorsight's employees, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

143.    Defendant Razorsight has infringed and is infringing the copyrights of TEOCO's BillTrak Pro™ DataLoader by unlawfully using the BillTrak Pro™ DataLoader in conjunction with the development of software, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

144.    Upon information and belief, Defendants have infringed and are infringing the copyrights of TEOCO's BillTrak Pro™ DataLoader by using them in their invoice service, unlawfully creating derivative works that infringe upon the BillTrak Pro™ DataLoader, and

publicly marketing, licensing, selling and using to provide services those infringing derivative works in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

145.    Defendants' infringements were and are willful, in bad faith, and executed with full knowledge of TEOCO's copyrights, and in conscious disregard for TEOCO's exclusive rights in the protected work.

146.    Defendants' infringements were and are willful and in bad faith disregard of the terms of the TEOCO employment and non-disclosure agreements entered into by Defendants Shital Sanghavi and Sundeep Sanghavi.

147.    TEOCO is entitled to recover Defendants' profits, TEOCO's actual damages, and punitive damages against Defendants.

148.    Defendants' deliberate infringement of TEOCO's copyrights has greatly and irreparably damaged TEOCO, and Defendants will continue to damage TEOCO greatly and irreparably unless enjoined by this Court. In the absence of injunctive relief, TEOCO will have no adequate remedy at law. Accordingly, TEOCO is entitled to a temporary and permanent injunction in accordance with 17 U.S.C. § 502.

## COUNT VI

### Copyright Infringement of TEOCO's BillTrak Pro™ Sequences Procedure

149.    TEOCO incorporates the prior paragraphs by reference.

150.    TEOCO's BillTrak Pro™ Sequences Procedure is an original copyrightable work. TEOCO has complied in all respects with 17 U.S.C. §101, et seq. and secured the exclusive rights in the work and has filed its copyright registrations in TEOCO's BillTrak Pro™ Sequences Procedure with the Copyright Office in accordance with its rules and regulations.

151.    TEOCO owns all rights, title and interest in the copyright of the BillTrak Pro™ Sequences Procedure.

152.    Defendants Shital Sanghavi and Razorsight have infringed and are infringing the copyrights of the BillTrak Pro™ Sequences Procedure by unlawfully reproducing and distributing identical copies of TEOCO's BillTrak Pro™ Sequences Procedure, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

153.    Upon information and belief, Defendant Sundeep Sanghavi has infringed and is infringing the copyrights of TEOCO's BillTrak Pro™ Sequences Procedure by unlawfully reproducing and distributing identical copies of the BillTrak Pro™ Sequences Procedure to Razorsight's employees, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

154.    Defendant Razorsight has infringed and is infringing the copyrights of TEOCO's BillTrak Pro™ Sequences Procedure by unlawfully using the BillTrak Pro™ Sequences Procedure in conjunction with the development of software, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

155.    Upon information and belief, Defendants have infringed and are infringing the copyrights of TEOCO's BillTrak Pro™ Sequences Procedure by unlawfully creating derivative works that infringe upon the BillTrak Pro™ Sequences Procedure, and publicly marketing, licensing, selling and using to provide services those infringing derivative works in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

156.    Defendants' infringements were and are willful, in bad faith, and executed with full knowledge of TEOCO's copyright, and in conscious disregard for TEOCO's exclusive rights in the protected work.

-31-

157.    Defendants' infringements were and are willful and in bad faith disregard of the terms of the TEOCO employment and non-disclosure agreements entered into by Defendants Shital Sanghavi and Sundeep Sanghavi.

158.    TEOCO is entitled to recover Defendants' profits, TEOCO's actual damages, and punitive damages against Defendants.

159.    Defendants' deliberate infringement of TEOCO's copyrights has greatly and irreparably damaged TEOCO, and Defendants will continue to damage TEOCO greatly and irreparably unless enjoined by this Court. In the absence of injunctive relief, TEOCO will have no adequate remedy at law. Accordingly, TEOCO is entitled to a temporary and permanent injunction in accordance with 17 U.S.C. § 502.

## COUNT VII

### Copyright Infringement of TEOCO's
### Java Coding Standard

160.    TEOCO incorporates the prior paragraphs by reference.

161.    TEOCO's Java Coding Standard is an original copyrightable work. TEOCO has complied in all respects with 17 U.S.C. §101, et seq. and secured the exclusive rights in the work and has filed its copyright registrations in TEOCO's Java Coding Standard with the Copyright Office in accordance with its rules and regulations.

162.    TEOCO owns all rights, title and interest in the copyright of the Java Coding Standard.

163.    Defendants Shital Sanghavi and Razorsight have infringed and are infringing the copyrights of the Java Coding Standard by unlawfully reproducing and distributing identical copies of the Java Coding Standard, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

164.    Upon information and belief, Defendant Sundeep Sanghavi has infringed and is infringing the copyrights of TEOCO's Java Coding Standard by unlawfully reproducing and distributing identical copies of the Java Coding Standard to Razorsight's employees, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

165.    Defendant Razorsight has infringed and is infringing the copyrights of TEOCO's Java Coding Standard by unlawfully using the Java Coding Standard in conjunction with the development of software, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

166.    Upon information and belief, Defendants have infringed and are infringing the copyrights of TEOCO's Java Coding Standard by unlawfully creating derivative works that infringe upon the Java Coding Standard, and publicly marketing, licensing, selling and using to provide services those infringing derivative works in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

167.    Defendants' infringements were and are willful, in bad faith, and executed with full knowledge of TEOCO's copyright, and in conscious disregard for TEOCO's exclusive rights in the protected work.

168.    Defendants' infringements were and are willful and in bad faith disregard of the terms of the TEOCO employment and non-disclosure agreements entered into by Defendants Shital Sanghavi and Sundeep Sanghavi.

169.    TEOCO is entitled to recover Defendants' profits, TEOCO's actual damages, and punitive damages against Defendants.

170.    Defendants' deliberate infringement of TEOCO's copyrights has greatly and irreparably damaged TEOCO, and Defendants will continue to damage TEOCO greatly and

irreparably unless enjoined by this Court. In the absence of injunctive relief, TEOCO will have

no adequate remedy at law. Accordingly, TEOCO is entitled to a temporary and permanent

injunction in accordance with 17 U.S.C. § 502.

## COUNT VIII

### Copyright Infringement of TEOCO's
### Database Coding Standard

171.    TEOCO incorporates the prior paragraphs by reference.

172.    TEOCO's Database Coding Standard is an original copyrightable work. TEOCO

has complied in all respects with 17 U.S.C. § 101, et seq. and secured the exclusive rights in the

work and has filed its copyright registrations in TEOCO's Database Coding Standard with the

Copyright Office in accordance with its rules and regulations.

173.    TEOCO owns all rights, title and interest in the copyright of the Database Coding

Standard.

174.    Defendants Shital Sanghavi and Razorsight have infringed and are infringing the

copyrights of the Database Coding Standard by unlawfully reproducing and distributing identical

copies of the Database Coding Standard, in violation of the United States Copyright Act, 17

U.S.C. §§ 106 et seq.

175.    Upon information and belief, Defendant Sundeep Sanghavi has infringed and is

infringing the copyrights of TEOCO's Database Coding Standard by unlawfully reproducing and

distributing identical copies of the Database Coding Standard to Razorsight's employees, in

violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

176.    Defendant Razorsight has infringed and is infringing the copyrights of TEOCO's

Database Coding Standard by unlawfully using the Database Coding Standard in conjunction

with the development of software, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

177.    Upon information and belief, Defendants have infringed and are infringing the copyrights of TEOCO's Database Coding Standard by unlawfully creating derivative works that infringe upon the Database Coding Standard, and publicly marketing, licensing, selling and using to provide services those infringing derivative works in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

178.    Defendants' infringements were and are willful, in bad faith, and executed with full knowledge of TEOCO's copyright, and in conscious disregard for TEOCO's exclusive rights in the protected work.

179.    Defendants' infringements were and are willful and in bad faith disregard of the terms of the TEOCO employment and non-disclosure agreements entered into by Defendants Shital Sanghavi and Sundeep Sanghavi.

180.    TEOCO is entitled to recover Defendants' profits, TEOCO's actual damages, and punitive damages against Defendants.

181.    Defendants' deliberate infringement of TEOCO's copyrights has greatly and irreparably damaged TEOCO, and Defendants will continue to damage TEOCO greatly and irreparably unless enjoined by this Court. In the absence of injunctive relief, TEOCO will have no adequate remedy at law. Accordingly, TEOCO is entitled to a temporary and permanent injunction in accordance with 17 U.S.C. § 502.

## COUNT IX

### Violation of the Federal Computer Fraud and Abuse Act

182.    TEOCO incorporates the prior paragraphs by reference.

183.    Within the meaning of and in violation of 18 U.S.C. § 1030, Defendant Shital Sanghavi intentionally and maliciously accessed a protected TEOCO computer, and the TEOCO server, using an employee password, and exceeded her authorized access by engaging in the unauthorized copying and distribution of Proprietary Information, including trade secrets, rendering her access unauthorized. Defendant Shital Sanghavi thereby caused extensive damage to TEOCO and its employees.

184.    Defendant Shital Sanghavi copied and distributed this Proprietary Information, including trade secrets, to Defendant Razorsight.

185.    Upon information and belief, Defendant Shital Sanghavi copied and distributed this Proprietary Information, including trade secrets, to third parties and Defendant Sundeep Sanghavi.

186.    Defendant's unauthorized access and disclosure of TEOCO's trade secrets and other Proprietary Information was willful, intentional, and executed with full knowledge of TEOCO's copyrights, trade secrets, and other Proprietary Information, and in conscious disregard for TEOCO's exclusive rights.

187.    Defendant's unauthorized access to, and disclosure of, TEOCO's trade secrets and other Proprietary Information was in willful and bad faith disregard of the underlying terms of her Employment Agreement, Non-Disclosure/Assignment Agreement, Confidentiality and Intellectual Property Assignment Agreement, and Termination Certificate.

188.    Defendant's deliberate and unauthorized access and disclosure of TEOCO's trade secrets caused damage to TEOCO's trade secrets, copyrights and other proprietary rights, and has resulted in substantial monetary damage to TEOCO, its officers and employees, far exceeding $5000 in any, and each, one year period since Defendant Shital Sanghavi's actions.

189.    TEOCO is entitled to recover compensatory damages in accordance with 18 U.S.C. § 1030(g).

190.    Defendant's deliberate violation of 18 U.S.C. § 1030(g) has greatly and irreparably damaged TEOCO, and Defendant will continue to damage TEOCO greatly and irreparably unless enjoined by this Court. In the absence of injunctive relief, TEOCO will have no adequate remedy at law. Accordingly, TEOCO is entitled to a temporary and final injunction in accordance with 18 U.S.C. § 1030(g).

### COUNT X

#### Misappropriation of Trade Secret

191.    TEOCO incorporates the prior paragraphs by reference.

192.    Defendants Shital Sanghavi and Razorsight have engaged in multiple willful and malicious acts of misappropriation of TEOCO's trade secrets within the meaning of Va. Code § 59.1-336.

193.    Upon information and belief, Defendant Sundeep Sanghavi has engaged in multiple willful and malicious acts of misappropriation of TEOCO's trade secrets within the meaning of Va. Code § 59.1-336.

194.    Defendants Sundeep Sanghavi and Shital Sanghavi possess, by virtue of their employment by and association with TEOCO, information which derives substantial economic value from not being known to and not readily ascertainable by proper means by other persons who can obtain economic value from its use. This information includes, but is not limited to, STIGMA, the BillTrak Pro™ Data Model Scripts, the BillTrak Pro™ DataLoader, the BillTrak Pro™ Sequences Procedure, the Java Coding Standard and the Database Coding Standard.

195.    This confidential information possessed by Defendants Sundeep Sanghavi and Shital Sanghavi has been the subject of efforts that are reasonable under the circumstances to maintain its secrecy, including the use of written confidentiality and non-disclosure agreements; use of customer agreements that prohibit reproduction, distribution and reverse engineering; use of employee passwords; use of proprietary and confidentiality legends; requirements that employees return all TEOCO materials once they are no longer employed at TEOCO; and other policies designed to ensure the confidentiality of this information and its denial to competitors of TEOCO.

196.    Defendants Sundeep Sanghavi and Shital Sanghavi, and through them Defendant Razorsight, possess information which constitutes one or more "trade secrets" of TEOCO within the meaning of Va. Code § 59.1-336.

197.    Defendant Razorsight knows, or has reason to know, that the confidential information of TEOCO which is known to Defendants Sundeep Sanghavi and Shital Sanghavi is information derived from or through a person who owes a duty to TEOCO to maintain the secrecy of such information.

198.    The disclosure to, or use by, Defendant Razorsight of confidential information of TEOCO known to Defendants Sundeep Sanghavi and Shital Sanghavi is disclosure or use through breach of a duty, or inducement of a breach of duty, to maintain secrecy, and constitutes "improper means" within the meaning of Va. Code § 59.1-336.

199.    The disclosure to or use by Defendant Razorsight of confidential information of TEOCO known to Defendants Sundeep Sanghavi and Shital Sanghavi constitutes "misappropriation" within the meaning of Va. Code § 59.1-336.

200.    Defendants Shital Sanghavi and Razorsight have violated, and threaten to further violate, the Virginia Trade Secrets Act by misappropriating TEOCO's trade secrets.

201.    Upon information and belief, Defendant Sundeep Sanghavi has violated, and threatens to further violate, the Virginia Trade Secrets Act by misappropriating TEOCO's trade secrets.

202.    As a direct and proximate result of Defendants' conduct, TEOCO has been injured and is threatened with further injury, as set forth above.

203.    As a direct and proximate result of Defendants' conduct, TEOCO has been injured irreparably and is threatened with further irreparable injury.

204.    Defendants' actions are willful and malicious.

205.    TEOCO is entitled to recover Defendants' profits, TEOCO's actual damages, and punitive damages against Defendants, in accordance with Va. Code § 59.1-338.

206.    Defendants' deliberate misappropriation of TEOCO's trade secrets has greatly and irreparably damaged TEOCO, and Defendants will continue to damage TEOCO greatly and irreparably unless enjoined by this Court. In the absence of injunctive relief, TEOCO will have no adequate remedy at law. Accordingly, TEOCO is entitled to a temporary and final injunction in accordance with Va. Code § 59.1-337.

## COUNT XI

### Breach of Contract – Employment Agreements

207.    TEOCO incorporates the prior paragraphs by reference.

208.    Defendant Shital Sanghavi has willfully breached her written and binding covenants with TEOCO by, for example, using TEOCO's Proprietary Information in connection with matters outside her work for TEOCO, copying and distributing TEOCO's Proprietary

Information to third parties and thus breaching the duty of confidentiality, and failing to return all materials reflecting the Proprietary Information.

209.    Upon information and belief, Defendant Sundeep Sanghavi has willfully breached his written and binding covenants with TEOCO by, for example, using TEOCO's Proprietary Information in connection with matters outside his work for TEOCO, copying and distributing TEOCO's Proprietary Information to third parties and thus breaching the duty of confidentiality, and failing to return all materials reflecting the Proprietary Information.

210.    These covenants are no more broad than necessary to serve the legitimate interests of TEOCO, and are valid and enforceable by injunction and otherwise.

211.    As a direct and proximate result of Defendants' conduct, TEOCO has been injured and is threatened with further injury, as set forth above.

212.    As a direct and proximate result of Defendants' conduct, TEOCO has been injured irreparably and is threatened with further irreparable injury.

213.    In executing the Non-Disclosure Agreement incorporated into the Employment Agreement, Defendant Sundeep Sanghavi acknowledged and agreed that "because any use or disclosure of [Plaintiff's] Proprietary Information other than for [Plaintiff's] benefit and without the [Plaintiff's] prior written consent could cause irreparable injury to the [Plaintiff], the [Plaintiff] in addition to any other remedies available, will be entitled to obtain an injunction to enforce the provisions of this Agreement."

214.    In executing the Non-Disclosure Agreement incorporated into the Employment Agreement of March 15, 2000, Defendant Shital Sanghavi acknowledged and agreed that "because any use or disclosure of [Plaintiff's] Proprietary Information other than for [Plaintiff's] benefit and without the [Plaintiff's] prior written consent could cause irreparable injury to the

[Plaintiff], the [Plaintiff] in addition to any other remedies available, will be entitled to obtain an injunction to enforce the provisions of this Agreement."

215.    In executing the Employment Agreement of September 10, 2001, Defendant Shital Sanghavi acknowledged and agreed that she would be personally liable to TEOCO for any direct and indirect damages suffered by TEOCO, including attorneys' fees incurred in enforcing the agreement or seeking redress for breach of the agreement, and that TEOCO shall be entitled to obtain injunctive relief for any such breach.

216.    TEOCO is entitled to recover actual and compensatory damages and injunctive relief.

### COUNT XII

### Breach of Contract - Marketing Representative Agreement

217.    TEOCO incorporates the prior paragraphs by reference.

218.    Upon information and belief, Defendants Razorsight and Sundeep Sanghavi have breached their written and binding covenants with TEOCO by, for example, using TEOCO's Proprietary Information in connection with matters outside his work for TEOCO, copying and distributing TEOCO's Proprietary Information to third parties and thus breaching the duty of confidentiality, and competing with TEOCO by, among other things, developing competitive software and offering competitive services to TEOCO customers.

219.    These covenants are no more broad than necessary to serve the legitimate interests of TEOCO, and are valid and enforceable, by injunction and otherwise.

220.    As a direct and proximate result of Defendants' conduct, TEOCO has been injured and is threatened with further injury, as set forth above.

221.    As a direct and proximate result of Defendants' conduct, TEOCO has been injured irreparably and is threatened with further irreparable injury.

222.    In executing the Marketing Representative Agreement, Defendants Razorsight and Sundeep Sanghavi acknowledged and agreed that "the restrictions contained in this Agreement are reasonable and necessary to protect TEOCO's legitimate interests," that "remedies at law may be inadequate and any violation of these restrictions will cause irreparable damage to TEOCO," and that "TEOCO will be entitled to injunctive relief against each violation."

223.    TEOCO is entitled to recover actual and compensatory damages and injunctive relief.

## COUNT XIII

### Breach of the Duty of Loyalty

224.    TEOCO incorporates the prior paragraphs by reference.

225.    As employees of TEOCO, Defendants Sundeep Sanghavi and Shital Sanghavi owed TEOCO a fiduciary duty, including a duty of loyalty, of good faith, and of fair dealing, in all matters touching upon their employment or the conduct of the business of TEOCO.

226.    Defendant Shital Sanghavi, breached this fiduciary duty owed to TEOCO by, *inter alia*, misappropriating trade secrets and misusing confidential and copyrighted information of TEOCO.

227.    Upon information and belief, Defendant Sundeep Sanghavi, breached this fiduciary duty owed to TEOCO by, *inter alia*, misappropriating trade secrets and misusing confidential and copyrighted information of TEOCO.

228.    This conduct was undertaken by Defendants willfully, with spite and malice, and with a reckless disregard for the rights of TEOCO.

229.    As a direct and proximate result of Defendants' conduct, TEOCO has been injured and is threatened with further injury, as set forth above.

230.    As a direct and proximate result of Defendants' conduct, TEOCO has been injured irreparably and is threatened with further irreparable injury.

231.    TEOCO is entitled to recover actual and compensatory damages, and injunctive relief.

## COUNT XIV

### Violation of the Virginia Business Conspiracy Act

232.    TEOCO incorporates the prior paragraphs by reference.

233.    Upon information and belief, Sundeep and Shital Sanghavi agreed and conspired against TEOCO to violate their contractual and common law duties to TEOCO, to misappropriate TEOCO Proprietary Information, and to injure TEOCO through unfair and illicit competition.

234.    Defendant Razorsight agreed to participate as a co-conspirator and intentionally received the misappropriated Proprietary Information and has benefitted and continues to benefit from unfair and illicit competition with TEOCO.

235.    It was the agreed intent of the conspirators that Razorsight be given access to and copies of TEOCO Proprietary Information, including but not limited to copyrighted works and trade secrets in violation of the Sanghavis' contractual and common law obligations to TEOCO and that Razorsight to obtain the value of TEOCO Proprietary Information without incurring the

cost and delay of lawfully developing the same or the cost of purchasing the legal right to use such Proprietary Information.

    236.   Defendants willfully and maliciously injured TEOCO through the Sanghavi Conspiracy.

    237.   TEOCO has been injured in its trade and business by reason of the acts of Defendants set forth above.

    238.   TEOCO is entitled to recover three times its actual and compensatory damages, including lost profits, as well as the costs of suit, including reasonable attorneys' fees, pursuant to VA Code Ann. §§ 18.2-500.

## PRAYER FOR RELIEF

    Wherefore, TEOCO prays for judgment and seeks relief against each of the Defendants as follows:

    1.   Judgment in favor of TEOCO against Defendants on Counts I through XIV;

    2.   An Order that preliminarily restrains and a Final Order that permanently enjoins Defendants from reproducing and/or publicly displaying TEOCO's copyrighted works, trade secrets, and other Proprietary Information;

    3.   An Order that preliminarily enjoins and a Final Order that permanently enjoins Defendants from marketing, distributing or licensing its products or services that reproduce and/or publicly display TEOCO's copyrighted works, trade secrets, and other Proprietary Information;

    4.   An Order that preliminarily enjoins and a Final Order that permanently enjoins Defendants from marketing, distributing or licensing its products or services that were developed using TEOCO's copyrighted works, trade secrets, and other Proprietary Information;

    5.    An Order that requires Defendants to delete all copyrighted works, trade secrets, and other Proprietary Information owned by TEOCO from their computers or web servers;

    6.    An Order that requires Defendants to recover all infringing copies of its products that were developed using TEOCO's copyrighted works, trade secrets, and other Proprietary Information from third parties to whom it has distributed these products.

    7.    An Order that requires Defendants to recover all of TEOCO's copyrighted works, trade secrets, and other Proprietary Information from third parties to whom it has distributed these materials.

    8.    An Order that requires Defendants to pay to TEOCO actual, compensatory and punitive damages;

    9.    An Order that requires Defendants to pay to TEOCO trebled damages pursuant to VA Code Ann. §§ 18.2-500;

    10.    An Order that requires Defendants to file with this Court within 30 days after the entry of final judgment a written statement, under oath, setting forth in detail the manner in which they have complied with the Order;

    11.    An Order that Defendants pay TEOCO for the costs of this action and its reasonable attorneys' fees;

    12.    An Order granting TEOCO such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

    ·Pursuant to Fed. R. Civ. P. Rule 38(b), TEOCO respectfully requests a trial by jury on all claims so triable.

Respectfully submitted,

Dated: February __, 2008    By:    _____/s/_____
Michael W. Robinson
Virginia Bar. No. 26522
William D. Dolan, III
Virginia Bar No. 12455
VENABLE LLP
8010 Towers Crescent Drive,
Suite 300
Vienna, VA 22182
703-760-1600 (phone)
703-821-8949 (fax)
mwrobinson@venable.com
wddolan@venable.com

Julie A. Petruzzelli
VENABLE LLP
575 7th Street, NW
Washington, DC 20004-1601
202-344-8538 (phone)
202-344-8300 (fax)
japetruzelli@venable.com

*Counsel for Plaintiff TEOCO Corp. and
Counterclaim Defendant Atul Jain*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the __ day of February, 2008, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means:

> Dana J. Finberg
> LECLAIRRYAN, a Professional Corporation
> Riverfront Plaza, East Tower
> 951 East Byrd Street
> Post Office Box 2499
> Richmond, Virginia 23218-2499
> dana.finberg@leclairryan.com
>
> *Counsel for Defendant Razorsight, Corp.*
>
> Kathleen J.L. Holmes
> WILLIAMS MULLEN, P.C.
> 8270 Greensboro Drive, Suite 700
> McLean, Virginia 22102
> Phone: (703) 760-5200
> Fax: (703) 748-0244
> kholmes@williamsmullen.com
>
> *Counsel for Defendants Sundeep*
> *Sanghavi and Shital Sanghavi*

By: _____/s/_____
Michael W. Robinson
Virginia Bar. No. 26522
William D. Dolan, III
Virginia Bar No. 12455
VENABLE LLP
8010 Towers Crescent Drive,
Suite 300
Vienna, VA 22182
703-760-1600 (phone)
703-821-8949 (fax)
mwrobinson@venable.com
wddolan@venable.com

*Counsel for Plaintiff TEOCO Corp. and*
*Counterclaim Defendant Atul Jain*

246625

-47-

# EXHIBIT C



# RAZORSIGHT

| About Us | Why Razorsight | Products | Industries | Clients | Partners | Knowledge Center | Contact Us |

Search ☐

## About Us

**About Razorsight**

Corporate Overview

Products

News

Events

Management Team

**Board of Directors**

Careers

Core Values

## Board of Directors

- **Vispi Daver**, *Director*
- **Ron Posner**, *Director*
- **Sundeep Sanghavi**, *Chairman*
- **Charlie Thomas**, *Director*
- **Steve Williams**, *Director*

### Vispi Daver, *Director*



Vispi Daver is a Partner at Sierra Ventures, a private venture capital firm located in Menlo Park, California. The firm invests in Information Technology companies based in the United States, Canada, China and India. Vispi focuses on the firm's investments across software sectors and is responsible for the firm's cross-border investment strategy in India. His other current investments at Sierra Ventures include Parature, Approva, Code Green Networks and Greenplum in the U.S. and MakeMyTrip.com and Seedfund in India.

## ON-DEMAND WEBINARS



**VIEW NOW!**

On Demand Technologies

Advance Payables

Automation and Simplify

Invoice Life Cycle

Management



**Unlocking Value in the "Invoice-to-Pay" Process**

DOWNLOAD Whitepaper



**Best Practices: Invoice Processing and Automation**

DOWNLOAD Whitepaper

Board of Directors

Prior to Sierra Ventures, Vispi was in the Corporate Development group at Network Associates (McAfee, Inc.), a large-cap public company in infrastructure software. His responsibilities included implementing corporate M&A objectives on both strategic acquisitions and divestitures of non-core product lines. He was also responsible for managing the company's portfolio of strategic investments. Prior to McAfee he ran product management for myCIO.com, a company that pioneered the delivery of desktop software online through the Internet. myCIO.com was among the first software companies to deliver product in a Software as a Services (SaaS) format.

Vispi was profiled as "Corporate Dealmaker" in The Deal, and is a regular participant on industry panels as an expert on M&A and venture investments in the software industry. Vispi earned his Masters in Business Administration (MBA) with distinction in Strategy and Finance from Yale University and his Bachelor of Science (BS) degree in Combined Sciences from Santa Clara University.

**Back to Top**

**Ron Posner, *Director***

Mr. Posner has been a leader in the consolidation of the high technology, Internet and software industries for more than 30 years. He has a strong track record - as CEO, investor and board member - of improving market values and liquidity results for public and private companies in record time frames.

He started his career at The Coca-Cola Company and Xerox Data Systems in sales and marketing roles. He then led two successful liquidity events in the computer services business in the 70s at National Training Systems, which he co-founded and sold to Safeguard Scientifics (SFE), and Tratec, which was taken public and then sold to McGraw Hill.

He then led consolidations and turnarounds in the PC software industry from the early 80s to the mid-90s as CEO of Peter Norton Computing, which he merged with Symantec (SYMC); as CEO of WordStar, which he merged with The Learning Company to create over $3B in market value after 20 consumer software acquisitions; and at Ansa Software (CEO role) and Ashton-Tate (Exec VP role), both of which were merged into Borland (BORL). He was an investor and board director of CyberMedia, which was sold to Network Associates (NET), and SmallWorld in the UK, which was sold to General Electric. He was also an early investor in

## Featured Case Study



**DOWNLOAD
the IBM Case Study**

RAZORSIGHT IS
**SAS 70 TYPE II**
CERTIFIED

We are committed to maintaining stringent control over client data security, and to simplifying our clients' audit and legal compliance requirements.
**Learn More**

## NEXT STEPS...

 **SEE**
A Demo

 **FREE**
30 Day Trial

 **LEARN about the
Razorsight Difference**

**DOWNLOAD**
Brochures

**CONTACT US**

Board of Directors

Segue Software (SEGU).

Mr. Posner then participated in the growth and consolidation of the Internet industry, starting in the mid-90s, as a start-up investor/board member in such companies as Match.com, now part of InterActiveCorp (IACI); Spinner.com, now part of AOL; NetAngels/Firefly, now part of Microsoft; Rival Networks, which was sold to Terra-Lycos; Flipside.com, which was sold to Vivendi, and Click2learn that was merged with Docent to form Sum Total Systems (SUMT). He remains an active investor in www.iwin.com.

Starting in 2000, his investment group, PS Capital, focused on the telecom/wireless industry and invested in the turnarounds at Novatel Wireless (NVTL) and Comdial (CMDZ) and funded Popular Telephony, a VOIP company. Recently, he helped form the Private Equity Management Group (PEMG), along with GA Capital and Hamilton Lane, which is consolidating VC/Private Equity Funds in Europe, Asia and the U.S., where their first purchase was Viventures in France.

Mr. Posner also serves on the boards of eChinaCash, Trinity Learning, and Puresight and is an investor in several VC Funds, including NEA and JP Morgan H&Q Fund. He was also an E.I.R. at Mayfield Fund. He received his MBA from Harvard Business School and a BS Math degree from Rensselaer.

**Back to Top**

## Sundeep Sanghavi, *Chairman*



Mr. Sanghavi, Razorsight's founder and visionary, has over 13 years of technical and consultative experience serving in management roles at industry leaders including Cable &Wireless and Arthur Anderson. Through his years of experience, Mr. Sanghavi defined the market and innovated carrier-to-carrier software while landing major clients including AT&T, Verizon, SBC, TMobile, Williams, Allegiance, New Edge Networks and US LEC. Prior to founding Razorsight, in his role at TEOCO, Mr. Sanghavi was responsible for Product Management and Sales and Marketing which generated in excess of $18M in revenue. Since founding

Board of Directors

Razorsight, Mr. Sanghavi has generated year-over-year revenue and margin growth with a hundred percent referenceable base of marquee clients, including several of the world's largest telecommunications companies. Mr. Sanghavi completed his B.S. in Finance at the University of Illinois, Chicago.

**Back to Top**

## Charlie Thomas, *Director*



Mr. Thomas joined Razorsight's board in April 2004, and became CEO in February 2005. Mr. Thomas has co-founded, grown and sold 3 companies over the last decade, and he has negotiated over $1 Billion in capital financings for his companies. He has successfully closed over 15 M&A transactions. Prior to Razorsight, Mr. Thomas founded and grew Claris Capital, a boutique investment bank, from 2002 to 2005. Mr. Thomas co-founded an Internet Service Provider which later sold to Verio and a Professional Services firm that sold to GTCR. In 1993 Mr. Thomas founded Net2000 Communications, a broadband telecommunications carrier, and led the company as CEO for nine years from start-up to an IPO led by Goldman Sachs in March 2000 with an initial market cap over $1 billion. Net2000 grew to $150 million in revenue and over 1,000 employees before being acquired by Cavalier Telephone in 2002.

Net2000 was named to Inc. Magazine's "Inc. 500" as one of the fastest growing private companies in America in 1999 and was also named to Deloitte & Touche's Fast 500 in 1998, 1999, and 2000. Net2000 was in the Top 10 of Washington Technology's Fast 50, and Washingtonian magazine rated Net2000 as one of the Top 50 places to work. The company was featured on several national news segments including NBC, CBS, MSNBC and CNN.

Mr. Thomas has over 20 years of experience. He also held sales and marketing positions with IBM and Bell Atlantic. Mr. Thomas serves on several corporate boards. Mr. Thomas is author of a book "Entrepreneur: A CEO's Lessons in American Capitalism" which was published in May 2005 (**www.ceolessons.com**). Mr. Thomas graduated from the University of Virginia where he played baseball.

Board of Directors

**Back to Top**

### Steve Williams, *Director*



Steve Williams is a general partner at Sierra Ventures, a private venture capital firm located in Menlo Park, California. The firm invests in early and development stage companies in communications, software and Internet-related content and infrastructure companies. Steve focuses on the firm's investments across software sectors.

Prior to joining Sierra Ventures, he was Executive Vice President of Worldwide Sales and Chief Operating Officer of Marimba, Inc., a leading provider of Internet infrastructure management solutions. He was responsible for Marimba's worldwide operations, new business directions, and sales strategies. Prior to joining Marimba, Steve served in executive positions with Western North America and Tivoli Systems, managing revenue in excess of $100 million dollars. He joined Tivoli upon the release of its initial product and built an extremely successful sales organization. Prior to his tenure at Tivoli, Steve was Vice President and General Manager of Bishop Graphics.

Steve holds a BSEE from California Polytechnic State University, San Luis Obispo.

**Back to Top**

© 2008 Razorsight Inc. All Rights Reserved.

# EXHIBIT D



Michael J. Klisch
(202) 842-7870
mklisch@cooley.com

March 10, 2008

Julie A. Petruzzelli
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601

**Re: Subpoenas to Sierra Ventures VII, L.P., Sierra Ventures VIII-A, L.P., and Sierra Ventures VIII-B, L.P.**

Dear Julie:

On February 15, 2008, plaintiff issued subpoenas ("Subpoenas") to this firm's clients, Sierra Ventures VII, L.P., Sierra Ventures VIII-A, L.P. and Sierra Ventures VIII-B, L.P. (collectively "Sierra") in the action styled: *TEOCO Corp. v. Razorsight Corp., et al.* Case No. 1:07cv887 CMH/BRP, United States District Court for the Eastern District of Virginia (Alexandria Division).

As a professional courtesy, I accepted service of the Subpoenas on February 15.

The following constitutes Sierra's objections to the Subpoenas. As promised, I will provide written responses to the Subpoenas no later than March 14, 2008. Despite the objections that follow, Sierra intends to produce documents — and I look forward to resolving any issues concerning Sierra's objections and responses.

### GENERAL OBJECTIONS

1.      Sierra Ventures objects to the Subpoenas to the extent that they seek the disclosure of information or documents protected by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege or doctrine.

2.      Sierra Ventures objects to the Subpoenas to the extent that they seek the disclosure of confidential and/or proprietary business information or documents.

3.      Sierra Ventures objects to the Subpoenas to the extent that they seek the disclosure of information or documents beyond that required by the Federal Rules of Civil Procedure and the applicable local rules.



Julie A. Petruzzelli
March 10, 2008
Page Two

## SPECIFIC OBJECTIONS

**REQUEST NO. 1:** All documents relating to Sierra Ventures' ownership interest in Razorsight, including without limitation any shareholder agreements or contracts.

**OBJECTION:** Sierra Ventures objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calls for information protected from disclosure by the attorney-client privilege and work product doctrine and calls for the disclosure of confidential and/or proprietary business information.

**REQUEST NO. 2:** All documents relating to Sundeep Sanghavi's ownership interest in Razorsight, including without limitation any shareholder agreements or contracts.

**OBJECTION:** Sierra Ventures objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calls for information protected from disclosure by the attorney-client privilege and work product doctrine and calls for the disclosure of confidential and/or proprietary business information.

**REQUEST NO. 3:** All documents relating to Shital Sanghavi's ownership interest in Razorsight, including without limitation any shareholder agreements or contracts.

**OBJECTION:** Sierra Ventures objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calls for information protected from disclosure by the attorney-client privilege and work product doctrine and calls for the disclosure of confidential and/or proprietary business information.

**REQUEST NO. 4:** All documents relating to any funding of Razorsight by Sierra Ventures.

**OBJECTION:** Sierra Ventures objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calls for information protected from disclosure by the attorney-client privilege and work product doctrine and calls for the disclosure of confidential and/or proprietary business information.

**REQUEST NO. 5:** All documents relating to or evidencing any communications between Sierra Ventures and Sundeep Sanghavi.

**OBJECTION:** Sierra Ventures objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calls for information protected from disclosure by the attorney-client



Julie A. Petruzzelli
March 10, 2008
Page Three

privilege and work product doctrine and calls for the disclosure of confidential and/or proprietary business information.

**REQUEST NO. 6:** All documents relating to or evidencing any communications between Sierra Ventures and Shital Sanghavi.

**OBJECTION:** Sierra Ventures objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calls for information protected from disclosure by the attorney-client privilege and work product doctrine and calls for the disclosure of confidential and/or proprietary business information.

**REQUEST NO. 7:** All documents relating to or evidencing any communications between Sierra Ventures and any employee or former employee of Razorsight regarding Sundeep Sanghavi.

**OBJECTION:** Sierra Ventures objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calls for information protected from disclosure by the attorney-client privilege and work product doctrine and calls for the disclosure of confidential and/or proprietary business information.

**REQUEST NO. 8:** All documents relating to or evidencing any communications between Sierra Ventures and any employee or former employee of Razorsight regarding Shital Sanghavi.

**OBJECTION:** Sierra Ventures objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calls for information protected from disclosure by the attorney-client privilege and work product doctrine and calls for the disclosure of confidential and/or proprietary business information.

**REQUEST NO. 9:** All documents relating to or evidencing any communications between Sierra Ventures and any employee or former employee of Razorsight regarding the Litigation or the claims asserted therein.

**OBJECTION:** Sierra Ventures objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calls for information protected from disclosure by the attorney-client privilege and work product doctrine and calls for the disclosure of confidential and/or proprietary business information.

**REQUEST NO. 10:** All documents relating to the Litigation or the claims asserted therein.


GODWARD KRONISH LLP

Julie A. Petruzzelli
March 10, 2008
Page Four

**OBJECTION:** Sierra Ventures objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calls for information protected from disclosure by the attorney-client privilege and work product doctrine and calls for the disclosure of confidential and/or proprietary business information.

**REQUEST NO. 11:** All documents mentioning, referring to, regarding, or discussing TEOCO.

**OBJECTION:** Sierra Ventures objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calls for information protected from disclosure by the attorney-client privilege and work product doctrine and calls for the disclosure of confidential and/or proprietary business information.

**REQUEST NO. 12:** All documents mentioning, referring to, regarding, or discussing Sage Management.

**OBJECTION:** Sierra Ventures objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calls for information protected from disclosure by the attorney-client privilege and work product doctrine and calls for the disclosure of confidential and/or proprietary business information.

**REQUEST NO. 13:** All documents evidencing the corporate structure and relationship of Sierra Ventures and its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations.

**OBJECTION:** Sierra Ventures objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, calls for information protected from disclosure by the attorney-client privilege and work product doctrine and calls for the disclosure of confidential and/or proprietary business information.

Sincerely,

Michael J. Klisch

MJK:cad

62447 v1/DC

# EXHIBIT E



Michael J. Klisch
(202) 842-7870
mklisch@cooley.com

**By Regular Mail**

March 14, 2008

Julie A. Petruzzelli
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004-1601

*Re: Subpoenas to Sierra Ventures VII, L.P., Sierra Ventures VIII-A, L.P., and Sierra Ventures VIII-B, L.P.*

Dear Julie:

On February 15, 2008, plaintiff issued subpoenas ("Subpoenas") to this firm's clients, Sierra Ventures VII, L.P., Sierra Ventures VIII-A, L.P. and Sierra Ventures VIII-B, L.P. (collectively "Sierra") in the action styled: *TEOCO Corp. v. Razorsight Corp., et al.* Case No. 1:07cv887 CMH/BRP, United States District Court for the Eastern District of Virginia (Alexandria Division) (the "Action").

As a professional courtesy, I accepted service of the Subpoenas on February 15.

As I promised, the following constitutes Sierra's written responses to the Subpoenas.

Your continuing to wrongfully accuse me and my client of things like evading service and being uncooperative is unproductive.  Please stop.  Also, we expect your client to pay Sierra the fees and cost that it incurred in having to defend the motion to transfer that you filed in California.

I look forward to resolving any issues concerning Sierra's objections and responses.

### RESPONSES

**REQUEST NO.  1:** All documents relating to Sierra Ventures' ownership interest in Razorsight, including without limitation any shareholder agreements or contracts.

**RESPONSE:**  Sierra Ventures stands on its objections.

**REQUEST NO. 2:** All documents relating to Sundeep Sanghavi's ownership interest in Razorsight, including without limitation any shareholder agreements or contracts.

**RESPONSE:**  Sierra Ventures stands on its objections.



Julie A. Petruzzelli
March 14, 2008
Page Two

**REQUEST NO. 3:** All documents relating to Shital Sanghavi's ownership interest in Razorsight, including without limitation any shareholder agreements or contracts.

**RESPONSE:** Sierra Ventures stands on its objections.

**REQUEST NO. 4:** All documents relating to any funding of Razorsight by Sierra Ventures.

**RESPONSE:** Sierra Ventures stands on its objections.

**REQUEST NO. 5:** All documents relating to or evidencing any communications between Sierra Ventures and Sundeep Sanghavi.

**RESPONSE:** Subject to its objections, Sierra Ventures will produce non-privileged documents, if any, that relate directly to the claims in the Action.

**REQUEST NO. 6:** All documents relating to or evidencing any communications between Sierra Ventures and Shital Sanghavi.

**RESPONSE:** Subject to its objections, Sierra Ventures will produce non-privileged documents, if any, that relate directly to the claims in the Action.

**REQUEST NO. 7:** All documents relating to or evidencing any communications between Sierra Ventures and any employee or former employee of Razorsight regarding Sundeep Sanghavi.

**RESPONSE:** Subject to its objections, Sierra Ventures will produce non-privileged documents, if any, that relate directly to the claims in the Action.

**REQUEST NO. 8:** All documents relating to or evidencing any communications between Sierra Ventures and any employee or former employee of Razorsight regarding Shital Sanghavi.

**RESPONSE:** Subject to its objections, Sierra Ventures will produce non-privileged documents, if any, that relate directly to the claims in the Action.

**REQUEST NO. 9:** All documents relating to or evidencing any communications between Sierra Ventures and any employee or former employee of Razorsight regarding the Litigation or the claims asserted therein.

**RESPONSE:** Subject to its objections, Sierra Ventures will produce non-privileged documents, if any, that relate directly to the claims in the Action.

**REQUEST NO. 10:** All documents relating to the Litigation or the claims asserted therein.



Julie A. Petruzzelli
March 14, 2008
Page Three

**RESPONSE:** Subject to its objections, Sierra Ventures will produce non-privileged documents, if any, that relate directly to the claims in the Action.

**REQUEST NO. 11:** All documents mentioning, referring to, regarding, or discussing TEOCO.

**RESPONSE:** Subject to its objections, Sierra Ventures will produce non-privileged documents, if any, that relate directly to the claims in the Action.

**REQUEST NO. 12:** All documents mentioning, referring to, regarding, or discussing Sage Management.

**RESPONSE:** Sierra Ventures stands on its objections.

**REQUEST NO. 13:** All documents evidencing the corporate structure and relationship of Sierra Ventures and its parents, predecessors, successors, subsidiaries, affiliates, divisions or operations.

**RESPONSE:** Sierra Ventures stands on its objections.

Sincerely,

Michael J. Klisch

MJK:cad

62721 v1/DC

# EXHIBIT F

**Wright, Damon W. D.**

| | |
|---|---|
| **From:** | Klisch, Mike [mklisch@cooley.com] |
| **Sent:** | Friday, March 21, 2008 2:53 PM |
| **To:** | Wright, Damon W. D. |
| **Cc:** | Petruzzelli, Julie A.; Finberg, Dana J.; Holmes, Kathleen |
| **Subject:** | RE: TEOCO v. Razorsight et al. |

Damon:

I am sorry but it appears that we have not reached an agreement so Sierra will not be producing documents at the moment. Moreover, given our hour long conversation on Tuesday, during which I told you that I did not believe that there were any responsive documents, I am disappointed that you are presuming that responsive documents exist.

Your document requests are highly objectionable and Sierra stands ready to litigate its objections to TEOCO's requests. I would be happy to discuss this on Monday and I remain hopeful that we can resolve this.

Have a nice weekend, Mike

---

**From:** Wright, Damon W. D. [mailto:DWright@Venable.com]
**Sent:** Friday, March 21, 2008 1:47 PM
**To:** Klisch, Mike
**Cc:** Petruzzelli, Julie A.; Finberg, Dana J.; Holmes, Kathleen; Robinson, Michael Wayne; Gorry, Timothy J.; Farnum, David M.; Kent, Meaghan H.
**Subject:** RE: TEOCO v. Razorsight et al.

Just tell us when we can pick up and copy the documents responsive to Request Nos. 5, 6, 7, 8, 9, 10 and 11.

---

**From:** Klisch, Mike [mailto:mklisch@cooley.com]
**Sent:** Friday, March 21, 2008 1:41 PM
**To:** Wright, Damon W. D.
**Cc:** Petruzzelli, Julie A.; Finberg, Dana J.; Holmes, Kathleen; Robinson, Michael Wayne; Gorry, Timothy J.; Farnum, David M.; Kent, Meaghan H.
**Subject:** RE: TEOCO v. Razorsight et al.

Damon,

Please stop mischaracterizing things.

Sierra Ventures does not want TEOCO to pay for the documents. Rather, Sierra Ventures wants to reimbursed for the frivolous and premature motion that you filed.

I'm tied up on other matters today, but I can talk on Monday.

Kindest Regards, Mike

**Michael J. Klisch, Esq.**

3/31/2008

Cooley Godward Kronish LLP
777 6th Street N.W. • Suite 1100
Washington, DC 20001
Telephone: (202) 842-7800 • Fax: (202) 842-7899
Bio: www.cooley.com/mklisch • Practice: www.cooley.com/litigation

---

**From:** Wright, Damon W. D. [mailto:DWright@Venable.com]
**Sent:** Friday, March 21, 2008 1:38 PM
**To:** Klisch, Mike
**Cc:** Petruzzelli, Julie A.; Finberg, Dana J.; Holmes, Kathleen; Robinson, Michael Wayne; Gorry, Timothy J.; Farnum, David M.; Kent, Meaghan H.
**Subject:** RE: TEOCO v. Razorsight et al.

Sierra Ventures wants TEOCO to pay $15,000 to get the valuation documents. We don't agree. So for now we want the documents that Sierra Ventures agreed to produce for free. Is Sierra Ventures now refusing to produce these too? I'm in the office now. My number is 202 344-4937. Please freel free to call.

---

**From:** Klisch, Mike [mailto:mklisch@cooley.com]
**Sent:** Friday, March 21, 2008 1:24 PM
**To:** Wright, Damon W. D.
**Cc:** Petruzzelli, Julie A.; Finberg, Dana J.; Holmes, Kathleen; Robinson, Michael Wayne; Gorry, Timothy J.; Farnum, David M.; Kent, Meaghan H.
**Subject:** RE: TEOCO v. Razorsight et al.

Hi Damon,

Thank you for your email.

When we spoke on Tuesday, you said that the *only* documents that TEOCO desired were valuations -- and that TEOCO would be satisfied if Sierra produced valuations. Moreover, last Friday, Dana Finberg called me from the courthouse and told me that Julie Petruzzelli had said the same thing. What changed?

Since your firm continues to complain about the lack of telephone calls -- and has stated a clear preference for telephone calls over written communications, please feel free to call me early next week to discuss this matter.

Lastly, please appoint one person from your firm for this discovery dispute.

Please advise.

Have a good weekend.

Thanks, Mike

**Michael J. Klisch, Esq.**
Cooley Godward Kronish LLP
777 6th Street N.W. • Suite 1100
Washington, DC 20001

3/31/2008

---

**From:** Wright, Damon W. D. [mailto:DWright@Venable.com]
**Sent:** Friday, March 21, 2008 1:07 PM
**To:** Klisch, Mike
**Cc:** Petruzzelli, Julie A.; Finberg, Dana J.; Holmes, Kathleen; Robinson, Michael Wayne; Gorry, Timothy J.; Farnum, David M.; Kent, Meaghan H.
**Subject:** RE: TEOCO v. Razorsight et al.

Mike,

Please let us know by 5 pm today when Sierra Ventures will be producing (or when we can pick up and copy) documents responsive to Request Nos. 5, 6, 7, 8, 9, 10 and 11. These are the Requests where Sierra Ventures said "Subject to its objections, Sierra Ventures will produce non-privileged documents, if any, that directly relate to the claims in the Action." Also, based on our conversation, I think I understood you to say that Sierra Ventures will withhold any non-privileged documents responsive to Request Nos. 5, 6, 7, 8, 9, 10 and 11 that were generated after the filing of the lawsuit. If so, I encourage you to reconsider. This time cut-off was not included as one of Sierra Ventures' general or specific objections. The relevant facts in this case include Razorsight activities and services that post-date the filing. The parties (including Razorsight) have also produced in discovery non-privileged documents generated after the filing. Because of the scheduling issues in our case, we would like to receive or pick up the non-privileged documents responsive to Request Nos. 5, 6, 7, 8, 9, 10 and 11 by noon Wednesday, March 26.

---

**From:** Wright, Damon W. D.
**Sent:** Thursday, March 20, 2008 4:38 PM
**To:** 'Klisch, Mike'
**Cc:** Petruzzelli, Julie A.; Finberg, Dana J.; Holmes, Kathleen; Robinson, Michael Wayne; Gorry, Timothy J.; Farnum, David M.; Kent, Meaghan H.
**Subject:** TEOCO v. Razorsight et al.

Mike,

I also enjoyed speaking with you on Tuesday.

We appreciate that Sierra is now willing to produce the valuation documents. However, TEOCO will not pay Sierra's attorney's fees. TEOCO did not want to have to file the motion to transfer. Sierra's actions cost our client to incur unnecessary fees. Despite asking again and again in e-mail and asking again and again that you call us, we were left in the dark about: (i) when, if ever, Sierra would be producing documents and (ii) what, if any, documents would be produced.

A return phone call by you would have helped to avoid fees. Timely production would have avoided fees. Sierra also could have consented to the motion, allowed the Eastern District of Virginia to rule on the subpoena issues, and avoided fees. You're a member of the Eastern District, and your office is in Washington, D.C. Rather than consent, Sierra (helped by a declaration from Razorsight's counsel) chose to oppose the motion. It isn't clear if Sierra is trying to disrupt damages discovery in the Eastern District, but this is the consequence. Thirty four days have passed since you accepted service of the subpoenas. We still have received no documents.

I recognize there has been a lot of finger-pointing, so let me make two simple points. First, Judge White did not order any payment of costs and fees, and Sierra should not condition its duty to comply with a subpoena on this. Second, you accepted service on February 15, Sierra's objections to the subpoena were due February 29, and the objections you served on March 10 are waived (see Rule 45(c)(2)(B)).

We would like to work this out. However, if Sierra insists on payment of its fees, we will have to file another motion in the Northern District of California and another motion to extend the deadline for TEOCO's damages expert report in this case. This will only result in more attorney's fees. By noon tomorrow March 21, please let me know if Sierra will drop

conditioning its compliance with the subpoenas on its receiving payment of fees.

---

*Damon W.D. Wright*
*Venable LLP*
*575 7th Street, N.W.*
*Washington, DC 20004-1601*
*(202) 344-4937 (direct)*
*(703) 973-8776 (cell)*
*(202) 344-8300 (facsimile)*
*dwdwright@venable.com (e-mail)*
*http://www.venable.com (firm web site)*

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader is not the intended recipient or the agent responsible for delivering the message to the intended recipient, any dissemination, distribution, or copying of this communication is prohibited.

---

**From:** Klisch, Mike [mailto:mklisch@cooley.com]
**Sent:** Thursday, March 20, 2008 3:44 PM
**To:** Wright, Damon W. D.
**Cc:** Petruzzelli, Julie A.; Finberg, Dana J.; Holmes, Kathleen
**Subject:**

Damon:

I enjoyed speaking with you on Tuesday. This follows up our conversation.

Sierra will agree to produce valuations that pre-date the filing of the complaint under the "Highly Confidential" designation by 3/26/08 if:

(1)     TEOCO does not challenge the "Highly Confidential" designations;

(2)     TEOCO agrees that producing the valuations is in full satisfaction of the subpoenas to the Sierra entities;

(3)     TEOCO dismisses the California action with prejudice; and

(4)     TEOCO pays Sierra the fees and costs incurred in litigating the motion to transfer ($15,000), which Sierra contends was premature, unnecessary, unwarranted and frivolous.

Please respond to this offer by close of business 3/21/08. Otherwise, Sierra is prepared to litigate its objections. I look forward to hearing from you.

Mike

**Michael J. Klisch, Esq.**
Cooley Godward Kronish LLP
777 6th Street N.W.  •  Suite 1100
Washington, DC  20001
Telephone: (202) 842-7800 • Fax: (202) 842-7899
Bio: www.cooley.com/mklisch • Practice: www.cooley.com/litigation

3/31/2008

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachment) is not intended or written by us to be used, and cannot be used, (i) by any taxpayer for the purpose of avoiding tax penalties under the Internal Revenue Code or (ii) for promoting, marketing or recommending to another party any transaction or matter addressed herein.

```
******************************************************************
U.S. Treasury Circular 230 Notice: Any tax advice contained in this communication
(including any attachments) was not intended or written to be used,
and cannot be used, for the purpose of (a) avoiding penalties that may be imposed under th
Code or by any other applicable tax authority; or (b) promoting, marketing or
recommending to another party any tax-related matter addressed herein. We provide this
disclosure on all outbound e-mails to assure compliance with new standards of
professional practice, pursuant to which certain tax advice must satisfy requirements as t
form and substance.
******************************************************************
******************************************************************
This electronic mail transmission may contain confidential or privileged information. If
you believe you have received this message in error, please notify the sender by reply
transmission and delete the message without copying or disclosing it.
******************************************************************
```

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachment) is not intended or written by us to be used, and cannot be used, (i) by any taxpayer for the purpose of avoiding tax penalties under the Internal Revenue Code or (ii) for promoting, marketing or recommending to another party any transaction or matter addressed herein.

```
******************************************************************
U.S. Treasury Circular 230 Notice: Any tax advice contained in this communication
(including any attachments) was not intended or written to be used,
and cannot be used, for the purpose of (a) avoiding penalties that may be imposed under th
Code or by any other applicable tax authority; or (b) promoting, marketing or
recommending to another party any tax-related matter addressed herein. We provide this
disclosure on all outbound e-mails to assure compliance with new standards of
```

professional practice, pursuant to which certain tax advice must satisfy requirements as t
form and substance.
*********************************************************************
*********************************************************************
This electronic mail transmission may contain confidential or privileged information. If
you believe you have received this message in error, please notify the sender by reply
transmission and delete the message without copying or disclosing it.
*********************************************************************

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged
information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended
recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the
intended recipient, please be advised that the content of this message is subject to access, review and disclosure
by the sender's Email System Administrator.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. federal tax advice contained in this communication (including any attachment) is not intended or
written by us to be used, and cannot be used, (i) by any taxpayer for the purpose of avoiding tax penalties under
the Internal Revenue Code or (ii) for promoting, marketing or recommending to another party any transaction or
matter addressed herein.

*********************************************************************
U.S. Treasury Circular 230 Notice: Any tax advice contained in this communication
(including any attachments) was not intended or written to be used,
and cannot be used, for the purpose of (a) avoiding penalties that may be imposed under th
Code or by any other applicable tax authority; or (b) promoting, marketing or
recommending to another party any tax-related matter addressed herein. We provide this
disclosure on all outbound e-mails to assure compliance with new standards of
professional practice, pursuant to which certain tax advice must satisfy requirements as t
form and substance.
*********************************************************************
*********************************************************************
This electronic mail transmission may contain confidential or privileged information. If
you believe you have received this message in error, please notify the sender by reply
transmission and delete the message without copying or disclosing it.
*********************************************************************

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged
information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended
recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the
intended recipient, please be advised that the content of this message is subject to access, review and disclosure
by the sender's Email System Administrator.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. federal tax advice contained in this communication (including any attachment) is not intended or
written by us to be used, and cannot be used, (i) by any taxpayer for the purpose of avoiding tax penalties under
the Internal Revenue Code or (ii) for promoting, marketing or recommending to another party any transaction or
matter addressed herein.

3/31/2008